### ANDREW BARTHOLOMEW *vs.* WALTER WARNER.

While there is no implied warranty of title in a sale of personal property by an officer on execution, yet the officer is bound to use perfect fairness in dealing with bidders for the property.

He clearly has no right to aid the creditor in an attempt to impose upon the bidders by selling as the property of the execution debtor that to which he has no title.

And it is questionable whether he is not bound to disclose facts within his knowledge which show that the execution debtor has no title or that it may be disputed.

Whatever may be the duty of the officer, the execution creditor is bound to the same fair dealing as any other vendor.

Where property was sold as belonging to an execution debtor when he had no title to it, and soon after the sale it was reclaimed by the owner, it was held that the purchaser could recover the price paid from the officer, in whose hands the money was lying, in an action for money had and received; and that his right of recovery was founded on his equitable right to the money, and was independent of any question of fraud on the part of the officer or the execution creditor.

ASSUMPSIT, to recover from the defendant, a constable, the amount paid to him for a horse sold by him upon an execution and bought by the plaintiff; the execution debtor having had no title, and the horse having been taken from the plaintiff by the owner. There was one special count in the declaration and the common count for money had and received. The case was tried to the jury in the superior court, on the general issue, before *McCurdy, J.*

On the trial it appeared that the defendant, as constable of the town of North Canaah, in Litchfield county, in this state, levied a writ of attachment in favor of Arnold & Little, of Sheffield, Massachusetts, against William F. Roorback, of Sheffield, upon a certain stallion horse, found in North Canaan, as the property of Roorback, and that Arnold & Little afterwards obtained judgment, and took out an execution thereon against Roorback ; that the defendant as constable, by the direction of Arnold & Little, levied the execution on the horse as the property of Roorback ; that the defendant gave public notice of the sale of the horse by posting, stating therein that the horse had been levied upon and was to be sold as the property of Roorback, and that the horse was afterwards sold at the post by the defendant, pursuant to the notice, as the property of Roorback ; that the plaintiff, supposing it to be the property of Roorback and that he should acquire a valid title by the purchase, bid off the horse at the sum of $140, which he paid over to the defendant and took possession of the horse ; that sometime after this, one Orlow Northway, of Sandisfield, Massachusetts, obtained possession of the horse without his knowledge or consent, and then claimed to hold him by virtue of a chattel mortgage, which one Morse of Sandisfield, the lawful owner of the horse, had a long time before given him, which mortgage Northway had caused to be recorded in the town of Sandisfield, according to the laws of Massachusetts ; that the horse had been left by Northway in the hands of Morse the mortgagor, as might lawfully be done under the laws of Massachusetts ; and that soon after the execution of the mortgage, Morse had placed the horse in the hands of Roorback, to be kept for a stock horse, under an agreement that Roorback should use him sufficiently to pay for his care and keeping. It also appeared that, at the time the defendant attached the horse, Northway made known to him and to Arnold & Little that he claimed the title to the horse, and that he caused the mortgage to be read in the hearing of the defendant, and demanded of the defendant that he should deliver the horse to him, but that the defendant refused to deliver him up, alleging that he was specially directed by Arnold & Little not to do so ; that soon

after the attachment Northway brought a suit against the defendant in Connecticut for the conversion of the horse, which was pending at the time of the sale of the horse to the plaintiff, and withdrawn after Northway took the horse out of the possession of the plaintiff; that after the demand by Northway, and before the sale, the defendant required of Arnold & Little a bond of indemnity, and that they gave him one for the sum of $2,000, which bond he still holds.

The plaintiff claimed to have proved that at the time of the sale of the horse he had no knowledge that Northway or any other person had any claim, mortgage or lien on the horse, nor that there was any controversy as to the title to the horse; that the defendant did not, at the sale, or before, disclose the above facts and his knowledge concerning the claims of North-way and Morse, but concealed his knowledge from the plaintiff; that Little attended the sale and bid upon the horse, but did not disclose the claim of Northway and Morse, nor direct that the facts should be disclosed by the defendant, although it was well known to Little that the plaintiff had bid upon the horse. The plaintiff thereupon claimed that the defendant, in the sale of the horse, did not conduct fairly, for the reason that he knew of the state of the title and did not disclose it; that the sale was in law and in fact fraudulent and void; and that the consideration for which he paid the price of the horse had wholly failed, and that he could recover back the price under the second count in his declaration.

The court charged the jury that if they should find the facts to be proved as claimed by the plaintiff, they would be justified in finding a verdict for the plaintiff under the second count in his declaration for the sum of $140, the purchase price, and the interest thereon.

The jury found a verdict for the plaintiff on the second count for that amount, and the defendant moved for a new trial for error in the charge.

*Granger* and *Hitchcock*, in support of the motion.

In a sale at the post on execution there is no implied warranty of title. The officer sells only the title of the execution

debtor, more or less. It is not claimed that here was any express warranty. If fraud in the sale was proved it would not sustain the declaration. *Dean* v. *Mason*, 4 Conn., 428 ; *Bartholomew* v. *Bushnell*, 20 id., 271. The record of the mortgage of the horse in Massachusetts, being in accordance with the laws of that state, was notice to all the world of the mortgage. The plaintiff therefore can not say that he had no notice of the claim of the mortgagee.

*Warner* and *Graves*, contra.

Although there is no warranty of title in sales at the post on execution, yet the officer is bound to conduct fairly and to disclose any facts known to him which would show that the execution debtor may have no title. If he does not he is liable to the purchaser in damages. *Commonwealth* v. *Dickinson*, 5 B. Monr., 506. But aside from any question of fraud or of duty on the part of the officer, there has been here an entire failure of consideration, and the execution creditor has no equitable title to the money in the hands of the officer, but it belongs in equity to the plaintiff, who may recover it in an action for money had and received. Such is the second count of the declaration, on which the jury found a verdict for the plaintiff.

DUTTON, J. This was an action of assumpsit brought by a purchaser of a horse at a sale on an execution in favor of Arnold & Little against one Roorback. The declaration contained a special count and a general count for money had and received. The plaintiff claimed that he paid to the constable, the defendant, the full value of the horse, supposing that it was the property of Roorback ; that in fact it never was the property of Roorback at all, but that it had belonged to one Morse, who, according to the laws of Massachusetts where he resided, mortgaged it to one Northway, and that Roorback merely had the possession of it for a special purpose ; that previous to the sale Arnold & Little and Northway were informed of the mortgage, but Arnold & Little directed the defendant to sell the horse and gave him a bond of indemnity.

The plaintiff further claimed that at the time of the sale he had no knowledge that Northway or any other person had any claim, mortgage or lien on the horse, nor that there was any controversy as to the title; that the defendant did not at the sale or before disclose the facts or his knowledge concerning the claims of Morse and Northway, but that he concealed his knowledge from the plaintiff; that one of the execution creditors attended the sale and bid upon the horse, but he did not disclose the claim, mortgage and lien of Northway and Morse, nor did he direct that the facts should be disclosed by the defendant to the plaintiff, although it was well known to the creditor that the plaintiff had bid upon the horse. After the sale Northway demanded the horse of the plaintiff and he gave it up to him.

The court, in opposition to the claim of the defendant, instructed the jury that if they found the facts as claimed by the plaintiff they might render a verdict for the plaintiff on the count for money had and received.

The defendant now insists that there ought to be a new trial for a misdirection. The principal ground taken by him is, that it was the duty of the officer merely to sell whatever title to the property the execution debtor had, and that he was under no obligation at the sale to make any declarations regarding the title to the property. But we think the charge was right. The plaintiff's counsel did not and could not claim that on a sale on execution there is any warranty even of title. Nor is an officer bound, as a general rule, to make any representations as to the quality or the title of the property offered for sale. But for the very reason that there is no warranty, he ought to conduct the sale in perfectly good faith. He must not say or do any thing calculated to deceive or mislead the bidders. If the facts were as claimed by the plaintiff, the execution creditors were endeavoring to collect their debt out of property to which, for this purpose, they had not the shadow of a claim. It never belonged to their debtor. The only persons who had any title to it were Morse and Northway. The officer, being aware of this, demanded of them an indemnity bond before he would sell the property. The plain-

Bartholomew *v.* Warner.

tiff claimed, and the jury under the charge would have a right to find, that the officer concealed the facts which were within his knowledge. The term " conceal" implies something more than a mere failure to disclose. We do not in general speak of a person's concealing a thing, unless he is in some way called upon to produce it. The circumstances of the case, as claimed by the plaintiff, lead to a strong suspicion that the officer was actively aiding the creditors. If so, the plaintiff parted with his money without receiving any consideration which he could retain, and the defendant obtained it by a breach of good faith and he would be equally liable with the creditors to refund it. It would be strange indeed if such is not the law. It would furnish a very convenient way to collect a bad debt. All that the creditor would be obliged to do, would be to find some officer who would aid him in his scheme, and direct him to levy his execution on some stranger's property as the property of the debtor, and then adroitly sell it to some unsuspecting purchaser.

The court, viewing the subject in this light, have no hesitation in sustaining this charge upon the main question. But there are respectable authorities which go much further than it is necessary to go in this case. They maintain the doctrine that if an officer has knowledge of defects of title he is bound to disclose them at the time of sale. *Commonwealth* v. *Dickinson*, 5 B. Monroe, 506. It is at all events difficult to reconcile an officer's silence, when he is aware that bidders are proceeding in the supposition that if they purchase they will acquire a good title when he has reason to believe they will not, with our ideas of honesty and propriety. If he is excused from going into particulars, why should he not be required to put bidders upon their guard ? Why should he not let them know that the title may be disputed ? Why, at any rate, should not the creditor, who is to derive all the benefit of the sale, be governed by the same rules of honesty as any other vendor ? The case of *Young* v. *Marshall*, 8 Bing., 43, is a strong authority to show that if the creditors were not in justice and equity entitled to this money, this action for money had and received would lie against the officer, he having taken

a bond of indemnity, even though he acted in good faith. In that case a creditor had sold certain goods on execution, after an act of bankruptcy of which both he and the sheriff were ignorant. The money had actually been paid over to the creditor. Tindall, C. J., says:—"It has been contended that the action does not lie because the money has been paid over to the judgment creditor without notice of the act of bankruptcy. If this were so, I should agree that the money was no longer in the defendant's hands to the use of the plaintiff. But money paid over on an indemnity may be said not to be paid over at all." The assignee recovered the money of the sheriff. But the assignee's right to the money in that case was no better than the mortgagee's right would have been in this. There was a stronger objection to this form of action in that case than in this, because it appeared that the money had actually been paid over, while in this case it does not. The decision is based upon the ground that the creditor was not entitled to the money which the officer had obtained by a sale of property on an execution in his favor, because his debtor was not the owner of the property. According to the principles of that case, Arnold & Little were not entitled to the money in the hands of the defendant, because the property sold did not belong to their debtor, but Northway, if he chose to ratify the sale, was. But he chose not to ratify the sale, but demanded of the purchaser the horse itself, which had not been legally sold. He, having no legal title to it, gave it up to the owner. This clearly gave to the purchaser the same right to the money which Northway would have had. In this view of the case it involves no question of warranty or fraud on the part of the officer or of the creditors. It is no attempt to make the officer personally responsible for any of his acts. It is the mere question to whom the money in the hands of the officer equitably belongs. It may be considered as coming under that class of cases where one man's money has come into the hands of another through mistake or misapprehension. Charity requires us to suppose that Arnold & Little would not have levied on this horse if they had not mistakenly supposed that it belonged to Roorback. After they discovered the mis-

take they could not in common honesty take the money, and no one else but the plaintiff had any claim to it.

We do not advise a new trial.

In this opinion the other judges concurred ; except McCURDY, J., who having tried the case in the court below did not sit.