SAMUEL HAZLE et al.

*v.*

THERESA A. BONDY et al.

*Opinion filed April 21, 1898—Rehearing denied June 10, 1898.*

1. MORTGAGES—*assignor of mortgage takes subject to existing equities.*
A mortgage cannot be assigned so as to cut off existing equities in
favor of the mortgagor against the mortgagee.

2. SAME—*agreement by grantee to pay mortgage does not confine mort-
gagee's remedy to the premises.*   The fact that a grantee agrees with
the mortgagor to pay the indebtedness on the property does not, in
the absence of consent by the mortgagee, cut off the latter's right
to an action at law against the mortgagor or his grantees on de-
fault in the payment of the debt.

3. SAME—*agreement by grantee to pay mortgage gives the mortgagee an
additional remedy.*   An agreement by a grantee with the grantor to
pay a mortgage indebtedness on the property gives the mortgagee
an additional remedy, by way of an action at law, against the
grantee, but does not, in the absence of consent, affect the mort-
gagee's right to an action at law against the mortgagor or his right
to foreclose on the property.

4. SAME—*suit at law on notes and foreclosure proceedings may be con-
current.*   A suit on mortgage notes against the maker, or the taking
of judgment thereon by confession, may be pursued concurrently
with a proceeding to foreclose the mortgage against the property.

5. SAME—*mortgagee may release part of property and retain lien against
remainder.*   A mortgagee may release part of the premises and re-
tain his lien for the whole indebtedness on the remainder, in the
absence of notice that third parties have become interested in
other parts of the premises than that released.

6. DEEDS—*unrecorded deed, destroyed by mutual consent of the parties,
cannot be regarded as in force.*   An unrecorded deed, destroyed by
mutual consent of the parties in order to correct the transfer by
making deeds to different portions of the premises, cannot be re-
garded as in force so as to charge a subsequent purchaser with
notice of a provision therein, claimed to have been omitted by mis-
take from the deeds afterward made.

7. SUBROGATION—*purchaser paying unassumed mortgage to protect
his title should be subrogated to mortgagor's rights.*   A purchaser of en-
cumbered property who, not having assumed the encumbrance, is
obliged to pay it off to protect his own interest or perfect his title,
is entitled to be subrogated to the position of the encumbrancer
with respect to all the latter's rights, securities, remedies and
priorities.

8. APPEALS AND ERRORS—*when court will not presume a release was for nominal consideration.* A release purporting to be for "one dollar and other good and valuable consideration," will not be presumed, on appeal, to have been made for a nominal consideration.

*Hazle* v. *Bondy*, 70 Ill. App. 185, reversed in part.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

On April 10, 1893, Theresa A. Bondy was the owner in fee simple of lots 20 and 21, block 1, in Clark & Mc-Connell's addition to Lake View, Chicago, the lots being each fifty feet front on Roscoe street. On that day she and her husband, Frederick A. Bondy, obtained through William Loeb & Co. a loan of $2000 on each of the lots from one Delia Metzler, and executed their promissory notes for these sums, with twelve interest notes for $60 each, payable to the order of themselves, which they endorsed and delivered to said Loeb & Co. for Delia Metzler, the notes bearing six per cent interest, the coupons payable semi-annually and the principal in three years from date. They each contained a power of attorney to confess judgment and provided for attorney's fees. To secure one of these principal and coupon interest notes Mrs. Bondy and her husband executed to Adolph Loeb, trustee, a trust deed in the nature of a mortgage upon lot 20, and to secure the other principal and coupon interest notes a similar trust deed on lot 21. These trust deeds were duly recorded April 11, 1893. Frederick A. Bondy represented his wife in obtaining the loans and in all subsequent transactions concerning the lots. The first interest note falling due on each of the principal notes was paid. No other payments were made, and the notes were sold on April 6, 1896, after maturity, by William Loeb & Co., agents of Delia Metzler, to the appel-

lant Samuel Hazle, for their full face value. On April 17, 1896, he caused judgments to be entered thereon against the makers in the circuit court of Cook county, for $2445 and costs on those secured by the trust deed on lot 20, and for $2470 on those secured by the trust deed on lot 21. Executions were immediately issued on said judgments and levied upon real estate owned by Mrs. Bondy in Lake View, other than that described in the trust deeds. Thereupon, on April 18, 1896, Peter Schnur, who had become the owner of the east thirty-four feet of lot 21, began this proceeding in chancery in the Superior Court of Cook county, making Theresa A. and Frederick A. Bondy, Samuel Hazle, William Loeb, Julius Loeb, William J. Haerther and Emily G. Haerther, his wife, and Adolph Loeb, trustee, parties defendant. By his bill as amended he sought to have the amount·of the mortgage lien on his part of lot 21 determined, alleging that $1500 had been paid on the two trust deeds, and praying that upon payment thereof his property be released and he be subrogated to the rights of the holder of the notes against the mortgagors, the Bondys. Samuel Hazle and Adolph Loeb, trustee, answered the bill admitting the execution of certain recorded deeds mentioned therein, but denying that $1500 had been paid on the mortgage indebtedness, as alleged. They then filed a cross-bill, making the Bondys, William and Julius Loeb and William J. and Emily G. Haerther parties ·defendant, setting forth the original loans and trust deeds and the judgment by confession on the notes, and asking that the trust deeds be foreclosed. Theresa A. Bondy and Frederick A. Bondy answered the original bill and this cross-bill, and then filed their cross-bill, making Schnur, Hazle, Pease, sheriff of Cook county, Adolph Loeb, trustee, and James R. Ward, who had become the owner of the west thirty-three feet of lot 20, parties defendant. In this cross-bill they insist that they are not liable to Haerther, to whom they conveyed the lots, or Schnur, as his grantee, in the

event the latter is compelled to pay the mortgage indebtedness to protect his interest in said lot; also, claiming that $1500 which was deposited by Haerther with William Loeb & Co., should be treated as a payment on the several mortgage notes, and praying an injunction to restrain the sheriff from selling the property levied upon by him under the judgments by confession.

The facts disclosed by the bill, cross-bills and several answers, and developed upon the hearing, are, in substance, as follows: Frederick Bondy, on March 17, 1894, acting as agent for his wife, entered into a written contract with the said William J. Haerther to sell him lots 20 and 21 for $82.50 per front foot, or $8250. This contract, however, was not produced on the hearing, having been lost or destroyed. On April 6, 1894, in pursuance of that contract, Mrs. Bondy and her husband executed a warranty deed for the lots, which deed was never recorded, and was returned by Haerther to Frederick Bondy shortly after its delivery, with a request that three other deeds be executed in its stead. Frederick Bondy then destroyed that deed in the presence and by the consent of Haerther; and his wife, he joining her, executed three other warranty deeds, as follows: a warranty deed to Bertha Harder, dated April 5, 1894, acknowledged April 19, 1894, and recorded April 25 following, conveying the east seventeen feet of lot 20 and the west sixteen feet of lot 21; a warranty deed to William J. Haerther, dated March 17, 1894, recorded May 3 following, conveying the east thirty-four feet of *lot 20;* and a warranty deed to William J. Haerther, dated March 17, 1894, recorded May 3 following, conveying the west thirty-three feet of *lot 21.* These three deeds, although executed and delivered in April, were dated back to March 17,—the date of the contract of sale to Haerther. As will be seen, a mistake was made in the two deeds to Haerther, in that the first should have conveyed the east thirty-four feet of lot 21 instead of lot 20, and the second, the west thirty-three

173—20

feet of lot 20 instead of lot 21. This is made apparent by
the following plat:

Haerther, on March 15, 1894, sold the east thirty-four
feet of lot 21 to the complainant below, Peter Schnur,
for $85 per front foot, or $2890, and conveyed the same to
him by warranty deed, the latter paying therefor in full.
At the time of payment, and for several months there-
after, Schnur knew nothing, in fact, of any incumbrance
against the property, notwithstanding said trust deeds
were of record, but bought it on the representation of
Haerther that it was clear of all incumbrance. Schnur
says in his testimony that Haerther never delivered the
deed to him in person, it being executed March 22, 1894,
and placed on record May 18, 1894, by Haerther. It is

admitted, however, that he accepted the deed and now claims title thereunder. The deed from the Bondys to Haerther containing the mistake above mentioned, and which conveyed the west thirty-three feet of lot 21, was recorded May 3, 1894. Haerther also, by warranty deed executed and recorded May 7, 1894, sold and conveyed the west thirty-three feet of lot 20 to Jacob F. Boos for its full value, who during the summer of that year placed improvements on the same of the value of $6000. He, like Schnur, purchased in ignorance of any incumbrance upon the property. He subsequently conveyed to James R. Ward.

On April 25, 1894, Haerther deposited with William Loeb & Co., agents of Delia Metzler, owner of the note secured by said trust deeds, $1500, and received therefor a certificate of deposit, as follows:

"$1500.00.                    CHICAGO, ILL., *April 25, 1894.*

"William J. Haerther has this day deposited in this bank $1500 in current funds, payable to the order of himself on the 10th day of April, 1896, on the return of this certificate properly endorsed, said money having been deposited as security on account of release deed on a portion of the premises described in trust deeds No. 8842 and 8843. The above amount is only payable after said trust deeds are paid in full.

WILLIAM LOEB & Co."

Adolph Loeb, trustee, thereupon released from the lien of the trust deeds the property described in the deed from Haerther to Bertha Harder.

It is claimed by the Bondys that by the original agreement between them and said Haerther he was to take the property subject to the incumbrances, and pay the same, and that the contract of sale, and the warranty deed which was destroyed, contained such a provision, but that Haerther, in drawing the three deeds executed instead thereof, omitted that clause, and that Frederick Bondy inadvertently overlooked the omission when he and his wife executed the same. In the fall of 1894 the mistake in the two deeds to Haerther was discovered,

and to correct the same two quit-claim deeds were prepared, to be executed by the Bondys. Instead, however, of executing these deeds as prepared, they made a quit-claim deed to Haerther of date November 3, 1894, correcting the mistake in the description in the two warranty deeds but reciting that it was executed to correct said errors, and containing a clause to the effect that Haerther assumed and agreed to pay the incumbrance on said lots. There is a conflict in the evidence as to whether this deed was delivered or accepted by any one, but it does appear that it was placed on record about the time of its execution. By whom is not shown.

Upon the hearing the court found that the original contract of sale and the first deed from Bondy to Haerther contained a provision to the effect that the grantee assumed and was to pay off the mortgage indebtedness; also, that the $1500 paid by Haerther to William Loeb & Co. was a proper credit on the mortgage indebtedness secured by the two mortgages, *pro rata*, to the extent of the property released at the time of its payment; also, that the west sixteen feet of lot 20 conveyed by Boos to James R. Ward were, by virtue of the acceptance of the quit-claim deed to Haerther of November 3, 1894, charged with the payment of the incumbrance on lot 20 to the extent of the value of that sixteen feet, and that the release by the trustee, with the consent of Hazle, of that property from the mortgage lien was an extinguishment of the indebtedness as against Mrs. Bondy and her husband; that the east seventeen feet of lot 21 were, by virtue of the deed of November 3, 1894, to Haerther, charged with the mortgage indebtedness on lot 21 to the extent of the value of said seventeen feet, and that Mrs. Bondy and husband were not liable to Schnur as to it by virtue of any warranty contained in any deed by them to Haerther. The decree was, that the injunction against the judgment on the note and security against lot 20 be made perpetual; that the judgment on the note secured by the trust deed

on lot 21 be declared paid to the extent of sixteen thirty-thirds of $1500, or $727, and that the balance, amounting to $1742.73, be a lien against the east thirty-four feet of lot 21, and that upon payment by Schnur to Hazle of that amount within thirty days his property be released, and that, as between himself and the Bondys, the latter were entitled to have that sum paid out of the proceeds of the east seventeen feet of said thirty-four feet to the extent of its full value, and if he failed to pay it they might do so and be reimbursed, and that upon the payment of said sum to Hazle the injunction against the judgment entered on the note secured by trust deed on lot 21 be made perpetual.

The Bondys complied with the decree, paying the money into court for the use and benefit of Hazle, and the injunction was ordered to be made perpetual. Hazle and Schnur appealed to the Appellate Court for the First District, where the decree of the Superior Court was affirmed. The same parties appeal to this court.

GEORGE HUNT, JAMES R. WARD, and DANIEL J. MC-MAHON, for appellant Hazle.

WM. S. YOUNG, and J. R. McFEE, for appellant Schnur.

BEAM & COOKE, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Objection is made by counsel for appellant Hazle that the bill of Schnur should have been dismissed because "prematurely filed," and the relief prayed by Mrs. Bondy and her husband in their cross-bill denied on the ground that they had a complete remedy at law. While it is difficult to see why Schnur should have filed his bill at the time he did, and conceding the Bondys had an adequate remedy at law as against Hazle, yet all parties having, without objection, submitted their claims to a court of equity, these objections will not now be entertained.

Counsel for appellees contend that "the decree of the Superior Court should be affirmed for want of a transcript of the record certified by the clerk of the court to be a true, perfect and complete copy of the record." We do not regard this point as meritorious. The transcript is in substantial conformity with the requirement of the statute and the rules of this court. No objection was made to it prior to the submission. The substantial questions in the case will therefore be considered on their merits.

*First*—What are the rights of the appellant Hazle, as holder of the mortgage indebtedness due from the Bondys to Delia Metzler? Of course, he occupies no better position than would his assignor if she had continued to hold the notes and mortgages,—not merely, as suggested, because he purchased them after maturity, but because they could not be assigned in equity so as to cut off any valid defenses against the original holder. The Bondys, the mortgagors, claim that Haerther, their grantee, agreed to pay the indebtedness, and that under such agreement the land is liable for the debts, and should be exhausted before recourse should be had to them, and other property belonging to them sold on execution. It cannot be seriously doubted that the mortgagee or her assignee was entitled to pursue either of the several remedies afforded by the law for the satisfaction of the indebtedness, and that the right to resort to an action at law against the makers of the notes was in no way qualified or limited by agreements or transactions between the mortgagors and their grantees, unless the assignee or his assignor in some way assented to such agreement or transaction. An agreement like that claimed to have been made would, if properly entered into, have given the mortgagee an additional remedy by way of an action at law against Haerther, the grantee, (*Thompson* v. *Dearborn,* 107 Ill. 87,) but would in no way have affected his right to hold the mortgagors liable in an action against them, or proceed directly against the mortgaged property. It is not claimed

that Delia Metzler or Samuel Hazle knew or assented to any such agreement between the Bondys and Haerther, much less that they, by reason thereof, waived the right to pursue any legal remedy for the satisfaction of the mortgage. Suit on the notes against the makers, or taking judgment against them by confession, was a proper remedy, and, as we have frequently held, might be pursued concurrently with a proceeding to foreclose. Certainly, a court of equity would not enjoin the action at law merely because the grantee of the mortgagors had assumed and agreed to pay the debt.

But it is contended that Hazle was attempting, in the judgments by confession, to collect $1500 more than the amount due. Assuming this to be a sufficient ground for equitable jurisdiction to enjoin the collection of the judgments, the facts do not sustain the contention. The certificate of deposit for the $1500 given by Loeb & Co. to Haerther shows on its face that it was not, as contended, deposited or received as a payment on the mortgages. The notes were in the hands of Loeb & Co., and if the money had been intended as a payment on the debt it would have been credited upon the notes in the usual way. If a payment, why agree to refund the money to Haerther? The certificate itself explains. The money was "deposited as security on account of release deeds on a portion of the premises described in the trust deeds." Another significant fact tending to show it was not intended as a payment is, that the indebtedness was not then due, and did not mature until about two years thereafter. It also appears that neither Haerther, Loeb & Co. nor the Bondys at any time treated the indebtedness as reduced by that or any other amount in the matter of accrued interest. Whether the certificate of deposit was transferred by Haerther to Boos, and by him to Ward, in good faith, for a valuable consideration,—as we think the evidence shows it was,—is to the Bondys a matter of no concern.

Nor can it be said that the release of the thirty-three feet deeded to Bertha Harder operated as a release of the mortgage indebtedness against other parts of the mortgaged premises, to the extent of the *pro rata* value of the part released. William Loeb & Co. were the agents of Delia Metzler, the mortgagee, and held the notes and trust deeds for her from the time of their execution until after maturity, when they were assigned to Hazle, and had authority to authorize the trustee to execute a release for any part or the whole of the mortgaged premises. The evidence shows the release of the thirty-three feet was made without any notice whatever to Delia Metzler, her agent or the trustee that third parties had become interested in other parts of the lots. In fact, at the time of the release,—April 25, 1894,—the records showed no transfer of other parts by Haerther, Schnur's deed not being placed upon record until May 18 following. In the absence of such notice the mortgagee had the lawful right to make the release and retain her lien on the remaining part for the whole indebtedness. *Stuyvesant* v. *Hayne*, 1 Sandf. Ch. 419; 3 Pomeroy's Eq. Jur. sec. 1226; *McMillan* v. *McCormick*, 117 Ill. 79.

We think the Superior Court erred in finding that $727 had been paid on the notes secured by the trust deed on lot 21, and that $1742.73 only remained due thereon. The decree should have been for the amount shown to be due, without credit.

*Second*—What are the rights of Schnur, the owner of the east thirty-four feet of this lot, as against the Bondys, the mortgagors? As we have seen, he took whatever title he has subject to the incumbrance. The fact that he was ignorant of the existence of the mortgage was the result of his own carelessness or misplaced confidence in Haerther. His property being liable for the whole amount due on the note secured by the trust deed on lot 21, (the release of the thirty-three feet to Bertha Harder, which included the west sixteen feet of this lot, as we have seen,

in no way affecting the mortgagee's right to enforce the lien for the whole amount due against the remainder of the property,) what is his remedy? Ordinarily, the most direct and simple relief afforded him would be by an action against his grantor, Haerther, for a breach of his covenants against incumbrances. But he is not limited to that remedy, and may also resort to any covenants in the deed by his remote grantee, Mrs. Bondy, to Haerther.

We do not regard the destroyed warranty deed, as it is called, as practically affecting the rights of any or either of the parties to this controversy. It is true, the general rule is, that where a deed of conveyance is executed and delivered its subsequent destruction or surrender will not have the effect to re-invest the title to the property conveyed in the grantor. (*Duncan* v. *Wickliffe*, 4 Scam. 452, and authorities there cited; *Oliver* v. *Oliver*, 149 Ill. 542.) Here, however, the original deed was returned and destroyed by mutual consent of the parties, not for the purpose of re-investing the title in the grantor, but in order that the property might be conveyed by three deeds instead of the one. The return and destruction of the deed, and the making of the new ones, were in the nature of correcting the original deed, so as to make the conveyance conform to the wishes of the parties. Under these facts it will scarcely be claimed that either Haerther or the Bondys could be heard to insist upon the original deed being in force and effect. Schnur neither knew of nor in any way relied upon it in taking title from Haerther, and is in no better position than he would have been to claim rights under it. Of course, if Haerther had obtained no other conveyance of the property, or if it had been shown in any way that reliance was placed upon that deed by Schnur when he purchased, he would be in a position to avail himself of its covenants. But no such claim is made. For still stronger reasons the Bondys, having consented to the destruction of that deed and executed and delivered others in its stead, cannot now insist upon the alleged

agreement contained in it binding Haerther to pay the mortgage debt, as against Schnur, who is admittedly an innocent purchaser without notice, actual or constructive, of any such agreement. The proof that the original deed contained such an agreement as would bind Haerther and his grantees to pay the incumbrances upon the property is by no means satisfactory, but in the foregoing view as to the rights of the parties it is not necessary to determine that fact.

Nor do we think Schnur should be bound in any way by the quit-claim deed of November, 1894, by the Bondys to Haerther, in which was written the agreement that the latter should pay the mortgage debt. He neither accepted that deed nor consented to its terms and conditions. It is said he claims title under it. Not necessarily so. He holds the legal title to the east thirty-four feet of lot 21 by deed from Haerther, who got possession of it by purchase from Mrs. Bondy, and the legal title to the west seventeen feet thereof, which was covered by her warranty deed. By the same deed Haerther also obtained the equitable title to the east seventeen feet of the thirty-four feet, and his grantee, Schnur, may at any time in a court of equity obtain the legal title thereto by a decree correcting the admitted mistake in the deed from Mrs. Bondy to his grantor. If Schnur should be compelled to pay the whole amount due against his property he could only have an action at law against Mrs. Bondy on the covenants in her deed to Haerther, in proportion to the value of the west seventeen feet to the whole, because her warranty deed only covers so much of the thirty-four feet. In equity, however, we are unable to see why he is not entitled, if compelled to pay the debt in order to protect his property, to be subrogated to the rights of the holder of the mortgage and notes against the Bondys. The debt is theirs, and they are primarily liable to pay it by the terms of their contract. Having failed to do so, if Schnur, their remote

grantee, is compelled to pay the debt in order to protect his property, no reason is perceived why he should not have his remedy against them. "One of the most familiar instances of the application of the doctrine of subrogation is where the purchaser of incumbered property, without having assumed the incumbrance, pays it off in order to protect his own interest or to perfect his own title. In such cases it is uniformly held that he is entitled to be subrogated to the position of the incumbrancer in respect of all the latter's securities, rights, remedies and priorities." (24 Am. & Eng. Ency. of Law, 253, and authorities cited in note 2, including the case of *Stiger* v. *Bent*, 111 Ill. 328.) Also, *Chaplain* v. *Williams*, 9 Pa. St. 341, as holding: "A purchaser, by parol, of a part of a tract of land, who pays off a mortgage on the whole to prevent a sale, will be subrogated to the benefit of the mortgage, and the judgment recovered thereon." "The test of the right of subrogation is found in answer to the inquiry whether the person who paid the mortgage debt is the one whose duty it was to pay it first of all. If the debt was not primarily his, and he only occupied a position as surety to the mortgagor, he is entitled to be subrogated to the position of the mortgagee, when he has paid the debt." Jones on Mortgages, (4th ed.) sec. 876; *Young* v. *Morgan*, 89 Ill. 199.

There is not sufficient evidence in this record to sustain the claim of appellees that they are not primarily liable for the payment of this debt, and certainly nothing upon which to hold Schnur, an innocent purchaser, bound to pay it, whatever might be the rights of the appellees against Haerther. The decree below should have been that if Schnur was compelled to pay the incumbrance against his property he should be subrogated to the rights of the holder of that indebtedness against appellees.

The release of the trust deed as to the west thirty-three feet of lot 20, as shown by the evidence, was with the consent of Hazle, holder of the indebtedness against

it, and we see no reason for disturbing the finding of the court below that thereby the lien was discharged. There is nothing in the testimony tending to show that it was not released for a good and sufficient consideration. We are not to assume by the language, "one dollar and other good and valuable consideration," that a mere nominal consideration was paid for the release.

For the errors indicated, the decree of the Superior Court must be reversed except as to lot 20. The cause will be remanded, with directions to dismiss appellees' cross-bill and dissolve the injunction granted upon it, with leave to appellant Hazle to suggest damages as provided by the statute in such case; and if said appellant Hazle shall proceed upon his cross-bill to foreclose, and a decree is entered in his favor for the amount found due him under the foregoing opinion, or any part thereof, against the property of Schnur, that the latter be subrogated to that extent to the rights of said appellant Hazle upon the judgment against appellees upon the notes secured by the trust deed against lot 21. The decree below as to lot 20 is in all things affirmed. Appellant Hazle should therefore pay one-half of the costs of this appeal and appellees the other half.

*Reversed in part and remanded.*