In re SHOESMITH.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1905.)

No. 1,096.

1. BANKRUPTCY—INSOLVENCY — FRAUDULENT CONVEYANCE — PROCEEDS—CONCEALMENT.

Where a bankrupt made a fraudulent conveyance of certain of his property, receiving $4,500 in cash, which at the time of the filing of an involuntary bankruptcy petition against him he had retained for several months, and he did not inform the court where or how it was kept, but

declared that since the filing of the petition he had invested it in distant states, such sum should be treated as "concealed assets," and deducted from his available assets, for the purpose of determining his insolvency.

2. SAME—SECURED NOTES.

Where a farm subject to a mortgage to secure an alleged bankrupt's note was fraudulently conveyed to his brother by a quitclaim deed, the grantee secured a mere equity of redemption, and, not being personally liable for the mortgage debt, such debt was chargeable as a liability of the bankrupt, in determining his insolvency.

3. SAME—COURTS—JURISDICTION—PETITION—AMENDMENT.

Where a court of bankruptcy had jurisdiction of the parties and subject-matter and exclusive jurisdiction of the proceedings, the fact that the first involuntary petition filed was defective for want of equity did not deprive the court of jurisdiction to permit a sufficient amended petition to be filed more than four months after the last fraudulent transfer of property by the bankrupt, alleged as the act of bankruptcy.

Appeal from the District Court of the United States for the Northern District of Illinois.

In Bankruptcy.

Eugene Garnett, for appellant.

Elmer D. Brothers, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge. Upon petition and answer in a petition in involuntary bankruptcy, charging insolvency and conveyances of property with intent to hinder, delay, and defraud creditors, the issue was referred for hearing. The referee reported that the conveyances were fraudulent as to creditors, that Shoesmith was insolvent, and recommended an adjudication of bankruptcy.

The financial condition of the alleged bankrupt was thus scheduled by the referee:

Assets.

| | | | |
|---|---|---:|---:|
| 1. | Cash, part of proceeds of real estate sold............. | $4,500 00 | |
| 2. | Stock in Iowa-Louisiana Land & Lot Company........ | 1,000 00 | |
| 3. | Seat on Open Board of Trade...................... | 500 00 | |
| 4. | Grain and stock on farm.......................... | 1,500 00 | |
| 5. | Tender in hands of W. N. Cronkrite................ | 22 50 | |
| 6. | One-half rents of foreclosed property during redemption period ........................................ | 39 41 | |
| | | | $7,561 91 |
| 7. | Deduct cash concealed....................................... | | 4,500 00 |
| | | | $3,061 91 |

Liabilities.

| | | | |
|---|---|---:|---:|
| 1. | Miscellaneous small debts sworn to by himself........ | $ 629 85 | |
| 2. | Judgment of the Meyer Company.................... | 1,825 25 | |
| 3. | State Bank of Freeport on note signed by Shoesmith.. | 50 00 | |
| 4. | State Bank of Freeport on note indorsed by Shoesmith | 4,700 00 | |
| 5. | Note secured by mortgage on farm................. | 5,000 00 | $12,205 10 |
| | Leaving an insolvency of................................ | | $ 9,143 19 |

Upon exceptions to the report, the court found that Shoesmith had disposed of his property with intent to defraud his creditors as charged, but found that he was not insolvent at the date of filing the petition, and thereupon dismissed the petition.

The opinion of the court below, exhibited in the record, discloses that it disagreed with the referee with respect to his statement of assets and liabilities in two particulars: (1) In deducting from the assets item No. 7, "Cash concealed, $4,500"; (2) in including in the liabilities item No. 5, "Note secured by mortgage on farm, $5,000" —and, restating the account accordingly, finds Shoesmith to be solvent to the extent of $356.81, taking, however, no notice of the exemptions allowed by the statutes of Illinois (Starr & C. Ann. St. 1896, vol. 2, p. 1887, c. 52, par. 13) of $400, Shoesmith being a married man, entitled to such exemption. This appeal by the creditors from the decree dismissing the petition presents for consideration the question of the financial condition of Shoesmith.

It is to be observed that under the bankruptcy law of July 24, 1897, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], where an act of bankruptcy shall have been committed by a debtor, as specified in section 3a of the act (30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), the burden of proving solvency rests upon the alleged bankrupt. Section 3c, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3422]. It was therefore incumbent upon Shoesmith, the court below and the referee having found that he had disposed of his property with intent to hinder, delay, and defraud his creditors, to clearly show to the court that the aggregate of his property at a fair valuation was sufficient in amount to pay his debts, exclusive of any property which he had conveyed, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors. Section 1, subd. 15, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]. A careful scrutiny of the testimony of Shoesmith exhibits an indisposition to disclose his real condition, but we need concern ourselves only with the two items in respect of which the court below disagreed with the referee. Possibly even this might be unnecessary, since upon the showing, as determined by the court, if we take into account the exemptions to which under the law Shoesmith was entitled, and which could not be appropriated to the payment of his debts, he would still be insolvent by a small amount. We are disposed, however, to waive that objection.

The first question to be considered has respect to the deduction by the referee from the assets stated of $4,500, being item No. 7. This is the same item as No. 1, being the proceeds which Shoesmith stated he had on hand at the date of the filing of the petition, as part of the $6,000 received from his brother upon the fraudulent conveyance to him of lands. The question is whether that sum was concealed with intent to hinder, delay, or defraud creditors. If it was, then, by the express terms of the act, it should not be considered in marshaling the assets of the estate to ascertain whether there is sufficient property to pay the debts. At the threshold of this inquiry we are confronted by the fact, found both by the court below and the referee, that the sum was derived from conveyances of property made with intent to hinder, delay, and defraud creditors. Indeed, the answer does not deny the fraudulent intent of the conveyances. It denies insolvency, and denies merely that the conveyance was an act of bankruptcy. It does not deny that the con-

veyance was fraudulent, but in legal effect only asserts that, because Shoesmith was solvent, the conceded fraudulent act was not an act of bankruptcy. Thus this money was received in pursuance of a scheme to hinder, delay, and defraud creditors, and with the purpose that it should not go to the payment of debts. It was received in cash several months prior to the filing of the petition, and at a time when a suit against him was about to be brought to trial, in which suit a judgment was rendered in favor of a creditor. It is conceded that he had $4,500 of this money at the time of the filing of this petition. He had retained it for several months. He does not inform the court where or how it was kept, but declares that since the filing of the petition he had invested it in distant states. We think the money was concealed within the meaning of the statute, and, by force of that statute, should not be considered in ascertaining the amount of property available to pay debts. Here was a large sum of money received in the attempt and with the purpose to defraud his creditors at a time when a judgment against him was imminent. He should have applied this money to the payment of his debts. Common honesty demanded that. Instead of so doing, he kept it beyond the reach of creditors. That is concealment within the meaning of the statute. To conceal is "to hide, withdraw, remove, or shield from observation; cover or keep from sight." Century Dictionary. The word is thus used in like statutes. Thomas v. State, 92 Ala. 51, 9 South. 541; O'Neil v. Glover, 5 Gray, 144. "Concealment has to do with what concerns others." Crabbe's Synonyms. It implies an act done or procured to be done, which is intended to prevent or hinder. It covers something more, however, than a mere failure to disclose. Bartholomew v. Warner, 32 Conn. 98, 103, 85 Am. Dec. 251. The intent to hinder, delay, and defraud is proven, not denied. The inference is irresistible that the proceeds were kept beyond the reach of creditors with like intent, and so were concealed.

The other item with respect to which the court below differed with the referee is item No. 5 in the schedule of liabilities, "Note secured by mortgage on farm, $5,000." This was a note of Shoesmith secured by a mortgage upon the real estate which he fraudulently conveyed to his brother by quitclaim deed. The purchaser bought a mere equity of redemption, and is not personally liable for the mortgage debt. Powell v. Westmoreland, 60 Ga. 572; Elliott v. Sackett, 108 U. S. 132, 140, 2 Sup. Ct. 375, 27 L. Ed. 678; Belmont v. Coman, 22 N. Y. 438, 78 Am. Dec. 213; Fiske v. Tolman, 124 Mass. 254, 26 Am. Rep. 659. And such, also, is the law in the state of Illinois, where the land conveyed is situated. Comstock v. Hitt, 37 Ill. 542; Fish v. Glover, 154 Ill. 86, 39 N. E. 1081; Hazle v. Bondy, 173 Ill. 302, 50 N. E. 671; Webster v. Fleming, 178 Ill. 140, 52 N. E. 975. It is true the mortgagee might pursue the security in the hands of the fraudulent grantee and subject it to the payment of the mortgage debt, but he is not obligated so to do. The note is the primary debt, the land the security; and Shoesmith, the primary debtor, could be pursued by the mortgagee without resort to the security, and could be compelled to pay the debt, if he

had property, independent of the security, sufficient for that purpose. If he paid the debt, he could not have recourse to the purchaser, or to the security, for reimbursement, in the absence of a binding assumption of the obligation by the purchaser, or of a valid agreement between vendor and vendee that the land should stand as an indemnity to the vendor. If the security were first pursued, he could be held responsible for any deficiency. It was a debt which should be included in the schedule of his liabilities.

Another question suggested at the argument has relation to the jurisdiction of the court below. It is contended that because the first petition filed by the creditor was defective, and a sufficient amended petition was filed more than four months after the last fraudulent transfer of the property, the court had no power to permit an amendment, and was therefore without jurisdiction to entertain the proceedings. The district court had jurisdiction of the parties. It had jurisdiction of the subject-matter. It has general and exclusive jurisdiction of bankruptcy proceedings. The objection goes to the want of equity exhibited by the petition, not to the want of power in the court. There was jurisdiction to determine the sufficiency of the petition, and it was complete to permit any amendment. The jurisdiction in such cases comes from the statute, and is not conferred by the accuracy and precision of the averments made in the petition. Smith v. McKay, 161 U. S. 355, 358, 16 Sup. Ct. 490, 40 L. Ed. 731; Blythe v. Hinckley, 173 U. S. 501, 19 Sup. Ct. 497, 43 L. Ed. 783. And the amendment, when filed, relates to and takes effect as of the date of the filing of the original petition. Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866.

GROSSCUP, Circuit Judge (concurring). I concur, without reserve, in all of the foregoing opinion, except the portion that charges the five thousand dollars, embodied in the brother's mortgage, as a liability to be taken into account in determining the question of solvency without a counter credit on account of the value of the land mortgaged. I greatly doubt whether, in balancing assets and liabilities with a view solely of determining the question of solvency, the views expressed in the opinion are correct. But a ruling on the status of this item does not affect the result, and need not, therefore, be further discussed.

The decree is reversed, and the cause remanded to the District Court with a direction to enter a decree adjudging Shoesmith a bankrupt.