Argued October 28, affirmed December 8, 1914.

## PATTERSON v. BAKER GROCERY CO.

(144 Pac. 673.)

**Bankruptcy—Preferences—Intention.**

1. Since the amendment of Bankruptcy Act of July 1, 1898, Chapter 541, Section 60, 30 Stat. 562, by Act of Congress of February 5, 1903, Chapter 487, Section 13, 32 Stat. 800, an intention on the part of an insolvent debtor to create a preference is not essential to a suit by his trustee in bankruptcy to set aside the advantage thus secured, but it is sufficient if the party obtaining the benefit had reasonable cause to believe that such effect would result from the means adopted.

**Bankruptcy—Preferences—"Insolvency."**

2. In order to ascertain whether a debtor is insolvent within the bankruptcy law, all his property that is salable or convertible into money should be taken into consideration, including exempt property, and a creditor has reasonable cause to believe his debtor insolvent when such a state of facts is brought to the creditor's notice as to the affairs and pecuniary condition of the debtor as would lead a prudent business person to the conclusion that the debtor is unable to pay his obligations as they mature in the ordinary course of business.

**Bankruptcy—Preferences—Evidence.**

3. In an action by a bankrupt's trustee to recover an alleged preference, evidence *held* to warrant a finding that defendant's general manager, when he caused the bankrupt's merchandise to be attached, had reasonable cause to believe she was insolvent and intended thereby to secure a preference.

**Bankruptcy—Preferences—Recovery—Action—Evidence.**

4. In a suit by a bankrupt's trustee to recover an alleged preference received by defendant through an execution sale of the bankrupt's stock, etc., it appearing that defendant's manager permitted the goods to be sold for an amount. less than his principal's judgment, costs and accrued expenses, evidence of the amount obtained for the goods on the sheriff's sale was properly received as bearing on the question whether defendant's agent had reason to believe that the bankrupt was insolvent when her goods were attached.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.   Statement by MR. JUSTICE MOORE.

This is an action by W. L. Patterson, as trustee in bankruptcy of the estate of Mrs. George W. Mutch

73 Or.—28

(Julia A. Mutch), a bankrupt, against the Baker Grocery Company, a corporation, to recover from a creditor of the estate the proceeds of property sold upon execution issued upon a judgment which it is alleged was suffered by the bankrupt while insolvent, and secured by the creditor whose agent had reasonable cause to believe that by the legal proceedings thus employed it was intended thereby to gain a preference. The facts are: That Mrs. Julia A. Mutch, on December 1, 1912, began conducting at Huntington, Oregon, a general merchandise business under the name of George W. Mutch & Co. She personally had charge of the store until July, 1913, but thereafter two clerks employed by her carried on the trade until September of that year, when J. E. Paul agreed with her to take at cost price the goods in the store, pay the creditors' demands, and if, after disposing of the property, any sum of money remained, to give it to Mrs. Mutch. An invoice was thereupon taken, and it was found that the value of the merchandise and fixtures was $2,833.43, and the amount of the bills receivable that were considered collectible was $219.80, making $3,053.23, and the sum due the creditors was $3,055.17, thus showing the liabilities to have been, as then estimated, $1.94 in excess of the assets. Mr. Paul thereupon took charge of the store, and on September 23, 1913, pursuant to Sections 6069 and 6070, L. O. L., as amended by Chapter 281, General Laws of Oregon of 1913, gave to the several creditors written notice that five days thereafter he proposed to purchase the entire stock of goods, wares and merchandise of the George W. Mutch Company, to assume the indebtedness thereof, to pay the same as soon as possible, and to conduct the business at the same place under the name of J. E. Paul Company. Mrs. Mutch, supposing the bargain had been

concluded, thereupon moved to Payette, Idaho. Nearly all the creditors objected to the contemplated sale of the goods to Paul, who immediately notified the creditors that he abandoned the proposed purchase after conducting the business a few days. The possession of the store was thereupon surrendered to Mrs. Mutch's agent, who had been appointed upon the recommendation of the Baker Grocery Company, a corporation. From the sale of goods while conducting the business, Paul paid to the defendant herein $119.14, the remainder after deducting the expenses incurred during the time. Mrs. Mutch's agent in charge of the store having been informed by a representative of her creditors that, unless a *pro rata* division of the proceeds of the sale of goods were made on account of her store indebtedness, legal proceedings would be instituted to compel such liquidation, the defendant herein, as plaintiff, began an action in the Circuit Court of the State of Oregon for Baker County against her to recover the sum due it. A writ of attachment in that action was issued, pursuant to which the goods in the store were seized October 10, 1913. Mrs. Mutch, at the request and upon the recommendation of an agent of the Baker Grocery Company, engaged an attorney, who interposed a demurrer to the complaint in the action; but, thereafter consenting that the demurrer might be overruled, he declined further to plead or answer, whereupon judgment was rendered against her October 14, 1913, for $874.44, with interest and $51 as the costs and disbursements, and it was also adjudged that the property attached should be sold to satisfy the sum so awarded. Based on the judgment, an execution was issued pursuant to which the goods, etc., were sold October 25, 1914, to F. S. Bubb for $920, of $45.34 less than the amount specified

in the writ and the additional expenses incurred in making the sale. Mrs. Mutch, on a voluntary petition therefor, was adjudged a bankrupt January 24, 1914, by the District Court of the United States for the District of Oregon, and the plaintiff herein, W. L. Patterson, was appointed trustee of the bankrupt's estate, and, having duly qualified as such, by leave of court commenced this action, which resulted in a judgment in his favor for the sum received upon a sale of the goods under the execution, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Clifford & Carroll,* with an oral argument by *Mr. M. Clifford.*

For respondent there was a brief and an oral argument by *Mr. Orville B. Mount.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended that an error was committed in refusing to grant a judgment of nonsuit. The questions to be considered on this branch of the case are whether or not the testimony received was sufficient to authorize a submission of the cause to the jury; was Mrs. Mutch insolvent October 10, 1913, when her property was attached in the action instituted by the defendant; and, if so, did its agents have reasonable cause to believe that the enforcement of the judgment would effect a preference? In addition to the property so sold on execution, it appears from a copy of Mrs. Mutch's petition in bankruptcy that she held accounts against debtors amounting to $369.92; household furniture valued at $300; books, pictures and musical in-

struments, $75; necessary wearing apparel, $100; and one piano worth $250—aggregating $725.

F. S. Bubb, who purchased the property at the sheriff's sale, testified that if the goods had been disposed of to a person who intended to continue the business not less than $2,500 should have been paid for the merchandise; but if sold at retail, where every person would have had an opportunity to purchase, $4,000 might have been realized therefrom in about six weeks at a probable expense of $250; that he inspected several sheets of paper comprising an invoice of the stock and when he found the aggregate value of the items examined equaled $1,700, and based on that partial appraisement, he bid $920 for the entire property which offer was accepted.

Mrs. Mutch testified that, believing she was unable to pay her creditors, she turned the property over to Mr. Paul, whom she thought could liquidate her indebtedness; that he operated the store a few days, when it was closed without her knowledge, whereupon she, without any particular understanding in respect thereto, surrendered the possession of the building and merchandise to Mr. Stuchell of the Baker Grocery Company supposing that the creditors would get their respective shares.

"Q. How did you come to turn it over to him?

"A. He was the biggest creditor, and I knew him better than I did any of the others, and so I turned it over to him.

"Q. Did you tell him anything about your financial condition?

"A. Yes, sir; I said I didn't believe I could carry the business on any more, and he could do with it the best he knew how."

J. W. Stuchell, the vice-president and general manager of the Baker Grocery Company, testified that

when its action was commenced against Mrs. Mutch he had no knowledge or any reasonable cause to believe that she was insolvent, or that it was intended in securing the judgment against her thereby to gain a preference.

1. Section 60 of the Bankruptcy Act of July 1, 1898, as amended February 5, 1903, as far as material herein, reads:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, * * and the effect of the enforcement of such judgment * * will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * (b) If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, * * or any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

Since that amendment was enacted an intention on the part of an insolvent debtor to create a preference is not essential to the maintenance of a suit to set aside the advantages thus secured. It is sufficient for that purpose if the party obtaining the benefit had reasonable cause to believe that such effect would result by the means adopted: *Western Tie & Timber Co.* v. *Brown,* 129 Fed. 728, 732 (64 C. C. A. 256, 260). In that case the court, discussing this question, observes:

"The statute does not require that it should be intended by the debtor, but is fully satisfied by the existence of an intention on the part of the actor— the person who procures, brings about or effects the transfer."

Intent, like any other mental action when put into operation, must be determined from a person's conduct when viewed in the light of, and evidently prompted by an exercise of, intelligent will.

2. In estimating the probable worth of a debtor, in order to ascertain whether or not he is insolvent, all his property that is salable or may be converted into money should be taken into consideration, including property that is exempt from execution under the state law: 1 Loveland, Bankruptcy (4 ed.), p. 303. A creditor has reasonable cause to believe a debtor to be insolvent when such a state of facts is brought to the creditor's notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business person to the conclusion that he is unable to meet the payment of his obligations as they mature in the ordinary course of business: *Toof* v. *Martin,* 13 Wall. 40 (20 L. Ed. 481).

3. From the testimony received it is believed that the jury might have inferred that the defendant's general manager, when he caused the merchandise to be attached, had reasonable cause to believe that Mrs. Mutch was insolvent and that he intended thereby to secure a preference, and, such being the case, no error was committed in denying the motion for a judgment of nonsuit.

4. An exception having been taken to a part of the court's charge, it is maintained that an error was committed in instructing the jury as follows:

"The matter of the sale under execution and the sheriff's return has been offered in evidence, and testimony has been given on that phase of it which is for you to consider with all other evidence bearing on the question whether or not she was insolvent when the attachment was levied. The value of the property for the purpose of determining the solvency or insolvency is not to be considered what it would be under peculiar circumstances as I have suggested, and therefore the price brought at a forced sale is not a criterion, but you have nevertheless the right to consider the price brought at the execution sale, having in mind all the circumstances attending the situation, and consider all the evidence and what the circumstances show as to what was the fair value of the property at the time of the attachment, and, in so far as to your minds the price brought at the execution sale would throw any light on the question, you have a right to consider that as a circumstance in view of all the surrounding circumstances and the situation and consider that as well as all other matters that have been produced before you in evidence."

The sheriff's return, to which the court thus referred, had been received in evidence over the objection and exception of the defendant's counsel. Attention is called by the plaintiff's counsel to cases holding that properly certified statements of prices obtained by a sheriff upon a sale of property afforded *prima facie* evidence of its value. A contrary view was taken in the case of *Willamette Falls C. & L. Co.* v. *Kelly,* 3 Or. 99, where the jury were instructed that it was not competent to show what a parcel of land brought at a sheriff's sale for the purpose of proving its value. No appeal was taken from the judgment rendered in that action, and as the instruction there given has never been approved by this court, so far as we have been able to discover, the language thus referred to cannot be considered authoritative. Without deciding the

question or intimating any view on the subject, it will be assumed that for the purpose of determining whether or not a person is insolvent the return of a sheriff, showing the sum received upon a sale of the debtor's merchandise, is incompetent to establish the value of his goods when they were attached. Presupposing this to be the correct rule, the court properly said to the jury:

"The value of the property for the purpose of determining the solvency or insolvency is not to be considered what it would be under peculiar circumstances as I have suggested, and therefore the price brought at a forced sale is not a criterion."

It will be remembered, however, that the defendant's general manager was present at the sheriff's sale and allowed the merchandise to be bid in for a sum which was $45.34 less than the amount of his principal's judgment, costs and accrued expenses. It would seem that self-interest should have prompted Mr. Stuchell to make an offer for the goods, when they were exposed for sale by the sheriff, of a sum equal to the amount due on the judgment, costs, etc., if he had considered the merchandise worth that sum; but, since he permitted the stock to be sold whereby a loss was necessarily sustained, the court properly permitted the jury to consider that circumstance in order to ascertain whether or not the defendant's agent had reason to believe that Mrs. Mutch was insolvent when her goods were attached.

Believing that no error was committed as alleged, the judgment should be affirmed, and it is so ordered.

AFFIRMED.