**In re COHN.**

**No. 3708.**

District Court, N. D. Texas, Dallas Division.

Nov. 5, 1936.

S. P. Brooks and G. H. Penland, both of Dallas, Tex., for application.

Ungerman & Ungerman and W. B. Harrell, all of Dallas, Tex., for trustee.

ATWELL, District Judge.

Cohn sought a settlement with his creditors at 33⅓ cents on the dollar. Stein-Bloch Company and Wilson Bros., two of his creditors, declined to accept, and when in March, 1936, notices were sent out for the consummation of the sale to the bankrupt's brother-in-law, for the 33⅓ cent offer, the two creditors instituted suits and attachments in the state court. A few days after that Cohn filed a voluntary petition. Thereupon, instead of requiring the trustee to enter the state court to contest the attachment liens, the two creditors entered the bankruptcy court and filed proofs of claim and asserted their liens. The trustee instituted appropriate proceedings to contest the same, and, after a hearing, the referee concluded that their claims should stand the same as other claims and without liens.

 Section 67f of the Bankruptcy Act, as amended (11 U.S.C.A. § 107 (f) does not invalidate such a lien, obtained within four months of the filing of the petition in bankruptcy, if the debtor was not insolvent when the attachment was levied. That portion of the statute provides that: "All * * * attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him * *· * shall be deemed null and void in case he is adjudged a bankrupt."

Whatever confusion there may have been in the decisions was removed by the case of Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 397, 68 L.Ed. 770. There it was said that: "The statute does not, as a matter of substantive law, declare void every lien obtained through legal proceedings within four months of the filing of the petition in bankruptcy. The lien may be valid, because the debtor was, in fact, solvent at the time the levy was made."

The record discloses that the bankrupt owed about $9,500. That his estate was worth about $3,000 outside of certain life insurance policies about which no testimony was offered as to their residuary value to the estate, without certain furniture, and without the homestead, which latter, under the laws of Texas, is exempt, and which was of the value of approximately $12,000.

 The complaining creditors assert that the referee should have required the trustee to prove insolvency, In re Ann Arbor Machine Company (D.C.) 278 F. 749; Burkett v. Simmons Hardware Company (Tex.Civ.App.) 52 S.W.(2d) 675; and String v. Birkhahn (C.C.A.) 30 F.(2d) 492; that, instead of that being done, the schedules showed solvency and the creditors introduced witnesses whose testimony tended to show the value of the homestead. We may accept as a definite rule in the national court, that the asserter of a fact carries the burden of its proof. The creditors having filed their proofs, claiming the benefit of state court liens, were attacked by the trustee on the ground that Cohn was insolvent when the attachments were run, and that therefore the two creditors should not stand favored thereby. Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L. Ed. 584.

 A somewhat more difficult question is whether in determining insolvency the exempt property one owns shall be excluded in the computation of assets. In Pirie v. Chicago Title & Trust Co., 182 U.S. 438, 451, 21 S.Ct. 906, 911, 45 L. Ed. 1171, the Supreme Court suggested that court definitions and the general meaning of the term "insolvency" were of little value since the Congress had definitely defined that word. "At times a debtor's property, though amply sufficient in value to discharge all of his obligations, may not be convertible without sacrifice into that form by which payments may be made. The law regards that possibility. In this there is indulgence to the debtor, and through him to preferred creditors. But the discussion need not be extended. The law has made its definition of insolvency, whatever the effect may be, and has determined by that definition consequences, not only to the debtor, but to his creditors and to purchasers of his property."

It will be recalled that the definition in the present law is: "A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which

he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Paragraph 15, section 1, title 11 U.S.C.A.

It will be recalled that the definition of insolvency in the former Bankruptcy Act was quite different. It will also be recalled that at the time this definition was pending it was sought in the Congress to place words in the definition which would exclude exempt property from being figured in the total of assets.

The referee concluded that the $12,-000 homestead should not be added to the other assets. There are some authorities supporting his position. In re Duke & Son (D.C.) 199 F. 199; In re Shoesmith (C.C.A.) 135 F. 684; Osborne v. Smith (C. C.) 18 F. 126.

It seems to me that to so reason is to deny the fullness of the congressional definition. By excluding a certain class of property it therein named, under construction authorities, it precluded every other exclusion. Had the Congress desired to leave out of the computation the debtor's homestead, it would not have defeated a proposed wording which definitely left it out, nor would it have included an exception which referred to only one other class of property.

In this case, the attachment lien creditors will get a larger proportion of the funds that have been realized than do other creditors. The spirit of the act is to prevent just such an happening. But one is not permitted to override the plain letter of the law in order to guarantee equality. Creditors still have such rights under such statutes as are still operative regardless of the salutary purpose of the Bankruptcy Act.

That a statute of the state of Texas excludes exempt property in determining whether an estate is solvent or insolvent is immaterial in this forum so far as the question now under discussion is concerned. Article 3495, Rev.St. of Tex.1925.

The trustee contends that there must be read into the definition of insolvency the meaning of the word "property." He calls attention to the fact that property is the right of any person to possess, use, and enjoy and dispose of a thing, and that the chief incidents of the ownership of property are the exercise of such rights, according to the will of the owner. 50 C.J. 779; Dallas Land & Loan Company v. Garrett (Tex.Civ.App.) 276 S.W. 471; State v. Gromer (Mo.Sup.) 252 S.W. 705.

He contends that since a homestead in Texas, even though it may be community property, cannot be sold by the husband without the wife's consent, therefore it is *not property which is available to the* creditors. Conceding the correctness of the definitions and the status of the Texas homestead in so far as the husband and wife are concerned, we are nevertheless driven to consider property in the sense of its use in the act as embracing everything that has exchangeable value, or that goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition. See Drake & Sons & Nickerson, 123 Me. 11, 121 A. 86.

Again some of the Texas appellate courts, in passing upon this national definition of insolvency, have construed it to mean that it does not exclude exempt property and that the value of such property should be considered in determining the issue of insolvency. Clifton Mercantile Co. v. Conway (Tex.Civ.App.) 264 S.W. 192; Burkett v. Simmons Hardware Co. (Tex. Civ.App.) 52 S.W.(2d) 675. See, also, In re Hines (D.C.) 144 F. 142; In re Crenshaw (D.C.) 156 F. 638; Patterson v. Baker Grocery Co., 73 Or. 433, 144 P. 673.

■ It follows that since the proof shows that the bankrupt's assets, when his homestead is included, largely exceeded the amount of his debts, he was not insolvent within the definition of the act, and that since he was not insolvent the liens of Stein-Bloch and Morris Bros., creditors, were valid, and they are entitled to the benefit thereof. An order may be drawn in accordance with this opinion.