BOLTON v. LAMBERT & CO. ET AL.

1. **Landlord's Lien:** PURCHASE OF GOODS SUBJECT TO: PAYMENT: SUBROGATION. L. & Co. were the owners of a stock of goods kept in a building which they had leased for a term not yet expired. The lessor assigned the lease to B., and the lessees assigned their rights under the lease to M., W. and C. The M. bank, upon the foreclosure of a chattel mortgage upon the stock, purchased the stock for the full amount of its claim, but subject to the lien for rent accrued and to accrue. *Held* that the bank, in paying the rent to B., was, in effect, only paying over a fund which L. & Co. had left in its hands for that purpose, and that it was not entitled thereby to be subrogated to the rights of either B. or M., W. and C., nor to the use of the building for the remainder of the term, without paying to M., W. & C. the reasonable rental value thereof.

*Appeal from Mahaska District Court*—HON. J. K. JOHNSON, *Judge.*

SATURDAY, OCTOBER 8.

THIS is an equitable proceeding, and involves the rights of the contending parties to a leasehold interest in a certain store-room in the city of Oskaloosa. There was a decree for the plaintiff, and also for W. R. Cowan, Ben McCoy and Mitchell Wilson. The defendant the Mahaska County Bank appeals.

*G. W. Lafferty, H. W. Gleason, John F. Lacey* and *J. O. Malcolm,* for appellant.

*Bolton & McCoy* and *L. C. Blanchard,* for appellees.

ROTHROCK, J.—The facts out of which the controversy

arose are as follows : In April, 1882, P. A. Bacon and R. P. Bacon made a written lease of the first floor of a business building to Lambert & Co., for the period of five years, at $50 a month, payable at the end of each month. Lambert & Co. took possession of the room under the lease, and conducted a general hardware store therein. On the 27th of August, 1884, Lambert & Co., still being in said business in said building, executed a chattel mortgage to the Mahaska County Bank. Previous to this said Lambert & Co. had made a chattel mortgage on the stock to Hibbard, Spencer, Bartlett & Co., for about $2,300. Neither of these mortgages was recorded when made, and on the 4th day of September, 1884, Hibbard, Spencer, Bartlett & Co. took possession of the goods under their mortgage. Lambert & Co. immediately notified the bank, and on the same day the bank paid off the mortgage of Hibbard, Spencer, Bartlett & Co., and took another mortgage upon the stock for the amount paid for the prior mortgage. The bank took possession of the goods, and afterwards proceeded to foreclose the mortgages by notice and sale. The goods were sold on the 27th day of September, 1884, the bank being the purchaser at the sale. Lambert & Co. were then and are now insolvent. It appears from the evidence in the case that they made over to the bank all of their goods, store fixtures and credits. They were in arrears in the payment of the rent of the store-room. At about the time the sale took place, the plaintiff, Bolton, made a contract with P. A. and R. P. Bacon, by which he purchased the lease of the store-room, and took an assignment thereof. By this purchase Bolton became invested with all the rights of the lessors. It is conceded that the rent then due, and afterwards to become due, was a first lien upon the stock of goods. By virtue of the purchase and assignment of the lease this lien was transferred to Bolton. At about the time that Bolton took an assignment of the lease from the Bacons, the defendants Lambert & Co. assigned in writing all of the rights which they had under the lease to

Ben McCoy, M. Wilson and W. R. Cowan, who were credit-
ors of Lambert & Co. The sale of the goods was made in
gross at public auction, and before the goods were offered for
sale the auctioneer published the following as one of the con-
ditions of the sale : "I offer for sale this stock of goods,
subject to any claim for rent or landlord's lien that there may
be against it, and whoever purchases must take it subject to
such claim or lien. I offer for sale only such interests in
said stock of goods as the Mahaska County Bank has under
and by virtue of the chattel mortgages executed by Lambert
& Co. to said bank, August 27, 1884, and September 4, 1884,
and by virtue of proceedings thereunder. Whoever pur-
chases at this sale buys only the interest of said bank, and,
over and above the money paid for said interest, party buying
must, in addition thereto, pay, or provide therefor, all claims
or rent accrued or to accrue which may in any manner be a
lien on said stock of goods. The rents now due amount to
$727.42, to October 1, 1884, and from October 1, 1884, con-
tinuing to May 2, 1887, at $600 per year, payable monthly
at the end of each month. The invoice of goods contained
in this store-room, ware-room, and shop on second floor,
amounts at this time to $6,974.23, besides a horse and deliv-
ery wagon."

The bank being the purchaser, it is very plain that, accord-
ing to the terms of the sale, it undertook to "pay or pro-
vide" for the payment of the rent ; and it is equally clear
that, as Bolton was the assignee of the lease, it was the duty
of the bank to pay the rent to Bolton. About the time of
the sale of the goods, Bolton commenced the first legal pro-
ceeding by an action to enforce his landlord's lien. He
obtained an injunction, and afterwards, on a motion by the
bank to dissolve the same, it was ordered that it be dissolved,
upon the bank paying to Bolton the amount of rent then due,
and depositing with the clerk of the court the amount of the
rent yet to become due ; the clerk to retain said money sub-
ject to the future orders of the court. At about this time

the bank offered to pay to Bolton the rent then due, and the rent to become due thereafter, provided and upon condition that the lease be assigned to the bank, and that it be released from further liability to P. A. and R. P. Bacon, or any other person. An offer was also made to pay the amount then due without any condition. These offers were refused. The bank paid the rent due to Bolton, and deposited the amount yet to become due with the clerk, in obedience to the order of the court. Afterwards the bank filed a cross-petition, making Cowan, Wilson and McCoy parties. They appeared and answered the cross-petition.

It is unnecessary to state the various claims made by the parties in the numerous and voluminous pleadings filed in the case. It is sufficient to state that the rights of the parties depend mainly upon two questions. One of them, and the one which we think settles all other questions in the case, involves the validity of the assignment by Lambert & Co. of their rights under the lease to Cowan, Wilson and McCoy. The bank claims that Lambert & Co. made an oral assignment of the lease to the bank, and this gave the bank the right to occupy the building until the expiration of the lease. It is claimed that this oral assignment was made before the written assignment to Cowan, Wilson and McCoy. The principal part of the evidence in the case is directed to this question of fact. Counsel for the bank insist that the court was in error in finding against the bank on this question. We have carefully examined the evidence, and we think the finding of the district court was correct. Indeed, we feel quite well satisfied that the right of Lambert & Co. to occupy the building, and the transfer of that right, and the legal effect of the right, was not thought of by any one representing the bank until after the written assignment was made to Cowan, Wilson and McCoy. The proof shows that the bank continued to occupy the building up to the time of the decree in the court below, and that the reasonable value of such occupancy was $50 a month.

Bolton v. Lambert & Co. et al.

We think the rights of the parties may be determined by the statement of a few plain, and it seems to us, well-nigh conclusive and indisputable propositions.

I. When the bank purchased the goods, it assumed the payment of the rent. The rent was really part of the price of the goods, and the purchaser was bound to pay the rent as part of the purchase price of the goods, without any condition. The bank had no more right to withhold the rent or impose conditions upon the payment of it, than a stranger would have had if he had been the purchaser of the goods. A sufficient amount in value of the goods was taken by the bank to pay the rent, and the payment was in effect made by Lambert & Co. In other words, Lambert & Co. placed the means in the hands of the bank with which to pay the rent.

II. The bank had no right to retain the building without the payment of the reasonable rental value thereof to the party entitled thereto. The contention that the decree of the district court requires the bank to pay double rent has no foundation either in fact or law. It paid nothing for that part of the stock of goods necessary to pay the lien for rent. If it should be allowed to occupy the building without paying the assignees of Lambert & Co. therefor, it would have it rent free, because it has of Lambert & Co.'s goods what it agreed was sufficient to pay the rent, and as a consideration therefor it agreed to discharge that obligation.

Counsel for the bank contend that when they paid the rent to the clerk of the court the bank was entitled to be subrogated to the rights of the Bacons, or of Bolton, their assignee. It is also claimed that the bank is entitled to be subrogated to the rights of Lambert & Co. or their assignees. We fail to find in the record any authority for the application of the doctrine of subrogation. When the bank paid the rent to the clerk it discharged its own obligation. It was not entitled to take the place of any one; and Lambert & Co. having assigned the rights to the occupancy of the building, the assignee and the bank had no relation to each other to which

subrogation should apply.   As we have seen, the bank under-
took to pay the rent as part of the purchase price of the
goods.   When it discharged that obligation—its own obliga-
tion—it had no right to be substituted for any one.   But a
conclusive reason why there is no right of subrogation is that,
when the bank purchased the goods, the purchase price
thereof was the full amount of the indebtedness of Lambert
& Co. to the bank.   This was the amount of the bid over and
above the rent which the purchaser of the goods assumed to
pay.   .

We think the decree of the district court is correct, and
it is                                    AFFIRMED.