## MACHINED PARTS CORP. *v.* SCHNEIDER.

1. CORPORATIONS—STOCK—CONTRACTS—INTENT.

In corporation's suit to recover 800 shares of stock free from claims of defendant, where, at time agreement transferring defendant's interest in such stock with $10 par value subject to a lien for $5,000 in favor of a third person to plaintiff, corporation had lost money and had not paid dividends for 6 years, its stock had no sale value except to its members, and no fraud was charged or intimated to induce plaintiff to enter into the agreement, finding of court that defendant intended to convey his complete title and interest irrevocably in settlement of action against him for balance of $1,500 loan which corporation had made him *held,* clearly supported by record.

2. SUBROGATION—"LEGAL SUBROGATION" DEFINED.

The doctrine sometimes spoken of as "legal subrogation," which has long been applied by courts of equity, rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of, and to be vested with the rights of, the person to whom such payment is made, without agreement to that effect.

3. SAME—CONVENTIONAL SUBROGATION DEFINED—NOT APPLICABLE TO MERE VOLUNTEER.

"Conventional subrogation" arises from an agreement between a debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof, and while such right is wholly independent of any interest in the property which the lender may have to protect, it does not inure to a mere volunteer who has no equities which appeal to the conscience of the court.

4. SAME—VOLUNTEERS—CONTRACTS.

A mere volunteer who, without any duty, moral or otherwise, pays the debt of another, can establish no equity and can obtain the right of substitution by contract only.

5. SAME—GROUND FOR EQUITABLE INTERVENTION MUST BE SHOWN.

One who seeks to be subrogated must show some ground for equitable intervention.

6. SAME—PAYMENT OF DEBT IN PERFORMANCE OF PRIMARY LIABILITY.

The doctrine of subrogation arises only in favor of one who pays the debt of another and not in favor of one who pays the debt in performance of his own covenants, for it is a right which never follows an actual primary liability.

7. SAME—CORPORATION—TRANSFER OF STOCK—PAYMENT OF LIEN TO THIRD PARTY.

Defendant, who had owned 800 shares of $10 par stock in plaintiff corporation subject to a $5,000 lien in favor of a third person, and conveyed equity in said stock to plaintiff in settlement of its action against him for balance of loan *held*, not entitled to subrogation to rights of third person to whom defendant had previously assigned certificate upon payment of the $5,000 loan and reassignment of stock since defendant was primarily liable on debt he paid.

Appeal from Wayne; Neal (Max E.), J., presiding. Submitted April 4, 1939. (Docket No. 8, Calendar No. 40,341.) Decided July 6, 1939.

Bill by Machined Parts Corporation, a Michigan corporation, against Max Schneider to determine title to shares of stock in plaintiff corporation, to require delivery of the stock, for an injunction and other relief. Decree for plaintiff. Defendant appeals. Affirmed.

*Miller, Baldwin & Boos,* for plaintiff.

*Leon Dreifuss,* for defendant.

SHARPE, J. Plaintiff corporation was organized in 1920. Its business was the buying and selling of dis-

continued automobile parts.   Defendant was in an
allied business somewhat similar to that of plaintiff
corporation; and defendant and plaintiff corporation
had many business transactions over a period of
years.   In 1929, defendant purchased 1,000 shares of
stock in the plaintiff corporation for the sum of
$12,000, and a short time later sold 50 of these shares
of stock to people connected with the corporation.
When defendant purchased the stock it was under-
stood that he did not intend to take an active part in
the management of the corporation, although he be-
came treasurer and a director.

In 1929, the principal business of the corporation
was the buying and selling of discontinued parts
from automobile factories, but shortly thereafter the
motor car manufacturers changed their systems and
accessories were no longer available for purchase in
large quantities, the result of which was that plain-
tiff corporation had a falling off in business.   In
June, 1930, defendant became financially embar-
rassed and borrowed $1,500 from plaintiff and
pledged as security for said debt 150 shares of the
stock purchased from plaintiff corporation.   Said
note and security was later assigned by plaintiff to
Richard D. Warden, an officer and stockholder of
plaintiff corporation.   Defendant repaid approxi-
mately $700 of this indebtedness, but not paying the
balance fast enough, suit was commenced against
him and settled in accordance with the following
agreement:

"Whereas, Max Schneider was the owner of 950
shares of stock in the Machined Parts Corporation,
thereafter pledging 150 shares of the stock so pur-
chased as security for the payment of obligation in-
curred to the Machined Parts Corporation in the
amount, to wit, $1,500, of which, to wit, $1,000 re-
mains unpaid, and further,

"Whereas, said Machined Parts Corporation heretofore assigned said claim of, to wit, $1,000, and the security pledged by Max Schneider to Richard D. Warden, and

"Whereas, the said Richard D. Warden has instituted suit against the said Max Schneider for the recovery of said claim so assigned to him, and

"Whereas, it is the mutual desire of all of the parties hereto to adjust any and all damages between them,

"Therefore, it is agreed by the said Max Schneider that the said Richard D. Warden and/or Machined Parts Corporation shall retain and have title of said shares of stock, to wit, 150 shares heretofore pledged to said corporation, this stock, together with Max Schneider's interest in the 800 shares of stock hereinafter described, to be in full satisfaction of the unpaid balance now owing Richard D. Warden, assignee of Machined Parts Corporation, or the Machined Parts Corporation, and said Max Schneider does hereby transfer to said corporation, and/or Richard D. Warden, all right, title and interest in the said 150 shares of stock, and does hereby irrevocably constitute and appoint Richard D. Warden, and/or any officer of the Machined Parts Corporation, his attorney, to transfer the said stock on the books of the within named corporation, with full power of substitution, and the said Max Schneider does also sell and assign all of his right, title and interest in the balance of his stock, to wit, 800 shares of the Machined Parts Corporation stock, to the said Richard D. Warden and/or the Machined Parts Corporation, said assignment being subject to an indebtedness to Charles Marienthal in the sum of $5,000 and interest thereon at 6 per cent. from the 15th day of August, 1931, which the said Richard D. Warden and/or the Machined Parts Corporation does not assume or agree to pay, except at their election to redeem said stock, and the said Max Schneider hereby irrevocably constitutes and appoints Richard D. Warden and/or any

officer of the Machined Parts Corporation, his attorney to transfer such interest as the said Max Schneider has in said 800 shares of stock, on the books of the said Machined Parts Corporation, with full power of substitution in the premises.

"The said Richard D. Warden and the Machined Parts Corporation do hereby acknowledge full satisfaction, release and payment in full of all indebtedness he or it may have against the said Max Schneider for the loan made of $1,500 or thereabouts, upon which and for which said suit is now pending in the circuit court for Wayne county, for its recovery, and also any and all other indebtedness and claims which he or it may have up to this date, against the said Max Schneider, and the said Max Schneider does hereby acknowledge full satisfaction, release of all and any indebtedness which the said Richard D. Warden and/or the Machined Parts Corporation may owe to him, and also releases the said Richard D. Warden and the said Machined Parts Corporation from any and all claims of any name and nature which he may have against the said Richard D. Warden and/or the Machined Parts Corporation.

"That the said Richard D. Warden and said Max Schneider hereby agree that the suit heretofore started by Richard D. Warden against the said Max Schneider, in the circuit court for Wayne county, same being No. 181842, be dismissed without costs.

> "MACHINED PARTS CORPORATION,
> "By C. E. LARSON,
>    "RICHARD D. WARDEN,
>    "MAX SCHNEIDER.

"Dated at Detroit, Michigan,
"March 18, 1935."

In August, 1931, defendant being indebted to one Charles Marienthal assigned certificate No. 17 for 800 shares of common stock of plaintiff corporation;

the material portion of the written assignment reads as follows:

"To whom it may concern:
"Be it known that on this 15th day of August, 1931, I have, for one dollar and other good and valuable consideration, disposed of my stock holdings in the following concerns to Mr. Charles Marienthal:

Description of Stock

"Item I — Certificate No. 17 for 800 shares common stock, Machined Parts Corporation, par value $10 a share."

The consideration of this assignment was $5,000 which was repaid in December, 1936, and the stock returned to defendant, who thereupon notified plaintiff corporation that he was the owner of the 800 shares of stock. As soon as plaintiff corporation learned that Marienthal had released the stock certificate to defendant, on December 29, 1936, a demand was made upon defendant for the delivery and surrender of the certificate for the 800 shares of stock. Defendant refused to surrender the stock certificate and plaintiff filed a bill of complaint in the circuit court of Wayne county praying for a decree that defendant had no title or claim for the 800 shares of the capital stock of plaintiff corporation. The cause came on for trial and the trial court held that plaintiff is entitled to the possession of the stock certificate, free and clear from any claims of defendant, for proper transfer and cancellation upon the books of the corporation.

Defendant appeals and contends that the proper interpretation of the agreement bearing date of March 18, 1935, is that the defendant was making an absolute sale of 150 shares of stock to plaintiff corporation, but as to the remaining 800 shares it was only a transfer of whatever interest he had at that

time subject to $5,000 and interest at 6 per cent. from August 15, 1931. Defendant also claims that having paid the pledge to Marienthal, subsequent to the signing of the agreement of March 18, 1935, he is entitled to be subrogated to the rights that Marienthal had in the stock certificate.

From an examination of the settlement agreement we find that when it was entered into defendant owed $1,000 to the corporation; that he had pledged 150 shares of the corporation stock to secure that debt; that an action at law had been instituted for the collection of the debt; that title to the 150 shares of stock was transferred to the corporation; and that title to the 800 shares of stock was also transferred to the corporation, "said assignment being subject to an indebtedness to Charles Marienthal in the sum of $5,000 and interest thereon at 6 per cent. from the 15th day of August, 1931, which the said Richard D. Warden and/or the Machined Parts Corporation does not assume or agree to pay, except at their election to redeem said stock," and that the agreement is in full satisfaction of any claims that the corporation has against defendant. Other facts entering into the reason for the agreement are that defendant was unable to pay the debt of $1,000 owing to plaintiff corporation; that defendant owned the stock for a period of about six years, had never received a dividend from the stock or a salary as an officer or director of the corporation; that the corporation had been forced to surrender its equity in a land contract on its factory and display building; that from 1929 to and including the year 1934 the corporation had lost money; that the corporation stock had no sale value except possibly to members of the corporation; and that there was no fraud charged or intimated to induce plaintiff to enter into the agreement.

The trial court found that when defendant signed the agreement it was his intention to convey his complete title and interest irrevocably. The record clearly supports such a finding.

The principal question involved in this cause is the right of defendant to be subrogated to the rights that Marienthal had in the stock certificate.

In *French* v. *Grand Beach Co.,* 239 Mich. 575, 580, we said:

"The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as 'legal subrogation,' and has long been applied by courts of equity. *Stroh* v. *O'Hearn,* 176 Mich. 164, 177. There is also what is known as 'conventional subrogation.' It arises from an agreement between the debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court."

In 25 R. C. L. p. 1324, § 11, it is said:

"While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another; for such a person can establish no equity, and can obtain the right of substitution by contract only."

In *Dunitz* v. *Woodford Apartments Co.*, 236 Mich. 45, 49, we said:

"Ordinarily, subrogation will not in any event be accorded a purely volunteer. Plaintiff had here no interest to protect until he voluntarily, and for surely no benevolent reason, but solely for the purpose of self-aggrandizement, injected himself into the already troubled affairs of those interested in this property. It is clear that one who seeks to be subrogated must show some ground for equitable intervention. *Bond* v. *Montgomery,* 56 Ark. 563 (20 S. W. 525, 35 Am. St. Rep. 119), and *Richards* v. *Cowles,* 105 Iowa, 734 (75 N. W. 648)."

In *Merchants' Bank & Trust Co.* v. *Bushnell,* 142 Tenn. 275 (218 S. W. 709), it is said:

"The doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of one who pays the debt in performance of his own covenants. This right never follows a primary liability. 37 Cyc. p. 374 and the cases there cited. *Spire* v. *Spire,* 104 Kans. 501 (180 Pac. 209). The doctrine is so well understood that we forbear to cite further authorities."

In *Luikart* v. *Buck,* 131 Neb. 866 (270 N. W. 495), the court said:

"The right of subrogation never follows an actual primary liability, and one who discharges a primary liability has no right of subrogation against another. In such cases payment is an extinguishment of the liability."

In *St. Louis & S. F. R. Co.* v. *Excello Feed Milling Co.* (Mo. App.), 215 S. W. 755, the court said:

"We are unable to see where the doctrine of subrogation enters into the case for the reasons: First, that 'subrogation is allowed only in favor of one who under some duty or compulsion, legal or moral, pays

the debt of another; and not in favor of him who pays a debt in performance of his own covenants, for the right of subrogation never follows an actual primary liability.' 37 Cyc. p. 374; *Hazle* v. *Bondy*, 173 Ill. 302 (50 N. E. 671); *Brown* v. *Sheldon State Bank*, 139 Iowa, 83, 94, 95 (117 N. W. 289)."

In *Brown* v. *Sheldon State Bank*, 139 Iowa, 83, 94 (117 N. W. 289), the court states as follows:

"Subrogation is allowable in equity, only in favor of a person who has advanced money to pay the debt of another, to whom he stood in the position of surety, or where he has been compelled to pay the debt of another to protect his own rights, 27 Am. & Eng. Encyc. p. 202. It is never allowed in favor of a person who is himself personally liable for the debt he discharges by payment. *Bolton* v. *Lambert & Co.*, 72 Iowa, 483 (34 N. W. 294); *Sacramento Bank* v. *Pacific Bank*, 124 Cal. 147 (56 Pac. 787, 45 L. R. A. 863, 71 Am. St. Rep. 36)."

As we examine the facts in this case we find that defendant as the maker of the $5,000 obligation to Marienthal was primarily liable for its payment. The agreement of March 18, 1935, did not impose any obligation upon plaintiff corporation to pay Marienthal and at the time defendant paid Marienthal the balance owing him, defendant had no legal or equitable interest in the stock certificate. He did not pay the debt of a third party, but discharged his own obligation. Subrogation may not arise under such circumstances.

The decree of the lower court is affirmed, with costs to plaintiff.

Butzel, C. J., and Wiest, Bushnell, Potter, Chandler, North, and McAllister, JJ., concurred.