MICHIGAN HOSPITAL SERVICE *v.* SHARPE.

1. SUBROGATION—HOSPITAL SERVICE CERTIFICATE—ACCIDENT.
   Plaintiff was not entitled to be subrogated to the extent of hospital service and care it supplied subscriber to such service under a comprehensive certificate which contained no subrogation clause nor exception making the subscriber ineligible to such service rendered for accidental injury not covered by workmen's compensation.

2. INSURANCE—HOSPITAL SERVICE CERTIFICATE—HAZARD.
   A contract to furnish the holder thereof hospital service not predicated upon hazard or peril, as contemplated by insurance laws, is not a contract of insurance.

3. PARTIES — JOINDER — STATUTES — INSURANCE — HOSPITAL SERVICE CERTIFICATE.
   Plaintiff who contracted to furnish hospital service under a comprehensive certificate which did not constitute an insurance contract would not be permitted to join the certificate holder in an action at law against a tort-feasor who had caused the certificate holder to have need of hospital service, under statute permitting insurers to join in actions at law against tort-feasors (CL 1948, § 612.2).

4. SUBROGATION—HOSPITAL SERVICE CERTIFICATE—ACTION AGAINST TORT-FEASOR—PARTIES.
   Plaintiff who had issued a certificate entitling defendant subscriber to hospital service could not join such defendant in an action against a tort-feasor who had caused such defendant to have need of hospital service and assert alleged claim of subrogation nor would the tort-feasor have been permitted to introduce testimony showing that the element of damages covering the hospital expenses had been paid by the plaintiff.

REFERENCES FOR POINTS IN HEADNOTES

[1] Generally as to applications of doctrine of subrogation, see 50 Am Jur, Subrogation § 33 *et seq.*
[5] 50 Am Jur, Subrogation §§ 6, 11.
[6–8] 50 Am Jur, Subrogation § 20.

5. Same—Equity.

The doctrine of subrogation is equitable in nature.

6. Same—Primary Liability.

The right of subrogation never follows a primary liability such as the obligation to furnish hospital service under a comprehensive certificate not predicated on hazard or peril.

7. Same—Discharge of Primary Liability—Payment.

The right of subrogation never follows an actual primary liability, and one who discharges a primary liability has no right of subrogation against another as payment is an extinguishment of the liability.

8. Same—Payment of Debt of Another—Primary Liability.

Subrogation is allowed only in favor of one who under some duty or compulsion, legal or moral, pays the debt of another and not in favor of him who pays a debt in performance of his own covenants, for the right of subrogation never follows an actual primary liability.

Reid and Dethmers, JJ., dissenting.

Appeal from Wayne; Murphy (George B.), J. Submitted October 9, 1953. (Docket No. 47, Calendar No. 45,755.) Decided April 5, 1954. Rehearing denied June 7, 1954.

Bill by Michigan Hospital Service, a Michigan nonprofit corporation, against John Sharpe, Leona Sharpe, John Sharpe, Jr., Natalie Sharpe, Richard E. Manning and James Hall to enforce subrogation and payment of amounts expended for hospital services following settlement of personal injury case. Dismissed on motion. Plaintiff appeals. Affirmed.

*Dykema, Jones & Wheat,* for plaintiff.

*Wilcox, Lacy, Lawson, Kirkby & Hunt* (*Eugene D. Kirkby,* of counsel), for defendants Sharpe.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Richard A. Harvey,* of counsel), for defendant Manning.

Reid, J. (*dissenting*). Michigan Hospital Service (a nonprofit organization) is incorporated under the provisions of PA 1939, No 109, as amended, CL 1948, § 550.501 *et seq.* (Stat Ann 1943 Rev § 24.621 *et seq.*), and operates a hospital service plan known as the Blue Cross plan.

Plaintiff filed a bill for subrogation against defendant John Sharpe, a subscriber to the hospital service plan, and his wife and minor children who were members of the plan, and were entitled to hospital service as provided in a certificate issued by plaintiff.

The following statement of facts was substantially set forth in plaintiff's bill of complaint.

Defendant Manning, at the time of the accident in question in this case, was employed by James Hall, doing business as James Hall Trucking Company. On August 18, 1950, defendants Sharpe were injured as a result of the negligence of defendant Manning in driving a truck of defendant Hall without negligence on the part of defendants Sharpe. Defendants Sharpe each received personal injuries and were hospitalized in a hospital participating in plaintiff's hospital service plan and defendants Sharpe received hospital service furnished by plaintiff to the value of $2,079.50, under the provisions of the certificate issued by plaintiff to defendants Sharpe.

Defendants Sharpe made claim against Manning and Hall for damages resulting from the accident, including cost of hospital care. Defendant Manning settled with the defendants Sharpe for $18,000 (or more) and obtained a release, including the hospital bill, from defendants Sharpe. Plaintiff requested defendants Sharpe to pay plaintiff any part of the sum received by them from Manning for the hospital care furnished them, which payment to plaintiff defendants Sharpe refused to make.

Plaintiff in its bill claims to be entitled by common-law and equitable principles of subrogation to recover from defendants Sharpe all sums received by defendants Sharpe from defendants Manning and Hall as damages for hospital services furnished under the hospital care certificate. Further, in division 2 of the bill of complaint, plaintiff claims to be entitled under common-law and equitable principles of subrogation to recover from defendants Manning and Hall the cost and value of hospital services furnished defendants Sharpe and made necessary by the negligent and wilful misconduct of defendants Manning and Hall. Plaintiff prayed that it be subrogated to the right of defendants Sharpe against defendants Manning and Hall to the extent of the cost and value of the hospital services and for a money decree against defendants Sharpe for the amount of money received by the Sharpes in damages for the hospital services furnished under the hospital care certificate; also, for a money decree against defendants Manning and Hall for the amount of the hospital care furnished defendants Sharpe under the hospital care certificate, for its costs and attorneys fees, and for other equitable relief.

The hospital care certificate issued by plaintiff to defendant John Sharpe did not contain a subrogation clause; neither did it contain any clause capable of being construed as abrogating equitable principles. Service was not had on defendant Hall and the case proceeded without him. Defendants Sharpe answered the bill of complaint. As before noted, defendants Sharpe settled their claim against defendant Manning for approximately $18,000. Defendants Sharpe state in their brief that "recovery of any more was very doubtful."

By an amendment to the bill permitted by the court, plaintiff alleged that defendants Sharpe and

their counsel and also defendant Manning were informed of plaintiff's interest in a settlement to the extent of the cost of the hospital care and plaintiff did not at any time waive its right to participate in said settlement to the extent of such cost, and that defendants Sharpe gave a release, with full knowledge on the part of defendants Sharpe and also of defendant Manning, that plaintiff had furnished defendant Sharpe with comprehensive hospital care and that plaintiff was interested in a settlement between defendant Manning and Sharpe to the extent of the cost of the hospital care.

Defendant Manning did not answer but moved the court to dismiss the bill for want of equity. Defendants Sharpe also so moved. The lower court by its decree granted defendants' motion and dismissed plaintiff's bill of complaint, as amended, without a hearing. We must therefore disregard the statements in the answer of defendants Sharpe and assume as true the truth of the statements in the bill as amended, for the purpose of disposition of this appeal.

Plaintiff claims substantially that it is engaged in a field of activity analogous to the field of insurance, and cites *Washtenaw Mutual Fire Insurance Company* v. *Budd*, 208 Mich 483.

Plaintiff also relies upon *Wolverine Insurance Company* v. *Klomparens*, 273 Mich 493, apparently relying upon the quotation in Justice FEAD's opinion in that case at the bottom of page 496 and top of page 497, as follows:

" 'And the conclusion is the same whether there is an express provision for subrogation of the insurer, or whether no such provision exists and the insurer's right arises alone from its equitable right.' LRA1916A, 1282, 1283, note."

Apparently defendants' claim for the *Klomparens Case* is that the result in that case depends upon the express agreement for subrogation.

It is not unimportant to note *Cushman & Rankin Company* v. *Boston & M. R. R.*, 82 Vt 390 (73 A 1073), especially at pages 395, 396; also, 83 ALR 82; also, *Pittsburgh, C. C. & St. L. R. Co.* v. *Home Insurance Company of New York*, 183 Ind 355 (108 NE 525, Ann Cas 1918A, 828), especially on page 363; also LRA1916A, 1282, 1283, cited in Justice Fead's opinion in the *Klomparens Case, supra.*

Subrogation was allowed by the United States supreme court in *Aetna Life Ins. Co.* v. *Moses,* 287 US 530, 531 (53 S Ct 231, 77 L ed 477, 88 ALR 647), for causing death of employee, to indemnitor of employer. Construction of a statute was involved in that case, but subrogation was not in the statute nor expressed in the contract. See *Travelers' Ins. Co.* v. *Great Lakes Engineering Works Co.,* 107 CCA 20 (184 F 426, 36 LRA NS 60), where subrogation was allowed to one who has insured against employers' liability, and has paid a death claim where death was caused by negligence of one in installing machinery. See, further, *Ocean Accident & Guarantee Corporation* v. *Hooker Electrochemical Company,* 240 NY 37 (147 NE 351), in which case among other things the court says, at page 51:

"But by whatever term we characterize the operation, it seems to us clear that the primary wrongdoer cannot make with the insured a settlement which will deprive of its known rights the insurer who is not a party to the settlement and has made its payments before the settlement."

Defendant Manning cites the following:

"There seems to be little doubt that a life insurance company cannot recover of one who has caused the death of an insured the amount which it has

thereby been compelled to pay. Nor, in the absence
of a stipulation in the policy to that effect, is an
insurance company subrogated, on the payment of
an accident policy, to the rights of the insured
against the one who caused the injury, since accident
insurance, unlike fire insurance, is not an indemnity
contract, but an investment contract, in which the
only parties concerned are the insurer and the in-
sured or the beneficiary." 29 Am Jur, pp 1003, 1004.

Further, defendant Manning cites from 3 Apple-
man on Insurance Law & Practice, p 278, § 1675:

"In personal insurance contracts, however, the
exact loss is never capable of ascertainment. Life
and death, health, physical well-being, and such
matters are incapable of exact financial estimation.
There are, accordingly, not the same reasons mili-
tating against a double recovery. The general rule
is, therefore, that the insurer is not subrogated
to the insured's rights or to the beneficiary's rights
under contracts of personal insurance."

The reasoning by Mr. Appleman, above quoted,
seems to be in line with the reasoning of such courts
as allow subrogation in cases of injury to property
or property rights but refuse subrogation in cases
of insurance of life and against personal injuries.
Sharpes' liability for hospitalization bill was liqui-
dated, not unliquidated. Under the allegations of
the bill, if found true on the hearing, the court could
have found that defendants Sharpe were fully com-
pensated for the hospitalization bill.

"Subrogation is an equitable doctrine depending
upon no contract or privity, and proper to apply
whenever persons other than mere volunteers pay
a debt or demand which in equity and good conscience
should have been satisfied by another." *Stroh* v.
*O'Hearn*, 176 Mich 164, 177.

Sharpe of course knew of the existence of the
certificate issued to him by plaintiff. Defendants

Sharpe settled with the tort-feasors, lumping the liquidated with the unliquidated damages without acquiescence of plaintiff. This the trial court is authorized, under the bill, to find is a species of fraud and that defendants Sharpe should be required to reimburse plaintiff to the extent of the payments received by defendants Sharpe for hospitalization.

We are not required to overlook the principles of equity in order to allow defendants Sharpe to retain moneys for the hospitalization and still leave it to plaintiff to pay for it, resulting in an unjust enrichment to defendants Sharpe. Such condition, if permitted, would tend to encourage fraud in the incurring of hospitalization bills.

I cannot agree with the statement in Mr. Justice BUSHNELL's opinion that not one iota of intent may be adduced from the contract for plaintiff to recover for hospital services rendered in an accident case. Accident cases are not excluded from the contract to furnish hospitalization. There is a notable difference between saying that not one iota of intent is to be adduced from the contract as contrasted with saying that there is no express recital of such intent. Such intent is plainly inferable from the contract and the circumstances of this case, in view of the equitable doctrine of subrogation.

Analogy between the contract in question and insurance business is argued by plaintiff, but plaintiff directly and primarily relies upon the long-time established equitable principle of subrogation, which antedates all law laid down for the modern business of insurance.

The hair-line distinction, apparently sought by Mr. Justice BUSHNELL to be recognized, has to do with the limitation that the indemnification must be for hazard or peril in order to be insurance, as distinguished from the more general phrase, "con-

tingent or unknown event," contained in an ALR definition, *infra,* or "contingent losses" in a citation from the *Nash Case, infra;* or the expenses of the ownership or use of an automobile, as in the *Continental Auto Club Case, infra.*

"Insurance is a. contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." 119 ALR 1242.

"Insurance policies are contracts to indemnify against contingent losses." *Nash* v. *New York Life Ins. Co.,* 272 Mich 680 (syllabus 1).

"While plaintiff is not a mutual company, still it is evident that the benefits to its 'members,' as above recited, embrace indemnity against expense resulting from the ownership, maintenance or use of an automobile and are to that extent within the meaning of the word insurance as used in the above-quoted excerpt from the insurance code." *Continental Auto Club, Inc.,* v. *Commissioner of Insurance,* 337 Mich 434, 436, 437.

It is stated in 44 CJS 471 that insurance "has been said to be best defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event."

It is to be noted that Webster's New International Dictionary. (2d ed) includes health, fidelity, title and credit insurance, as though insurance in fact, and along with the more frequent, accident, fire, life and marine insurance.

The instant contract seems to fall within the definitions just quoted from ALR, the *Nash Case,* and CJS. However, counsel for plaintiff, evidently induced by some such line of authorities as those quoted by Mr. Justice BUSHNELL, concedes in his brief that "plaintiff, not being an insurance com-

pany," is not benefited by the provisions of CL 1948, § 612.2 (Stat Ann § 27.654), which "permits insurers to join in actions against tort-feasors" (quoting from plaintiff's brief). Ground for such concession of plaintiff might be found in 29 Am Jur (1953 Supp), pp 4, 5, Insurance, § 12.5., which states that a majority of cases dealing with the subject hold that a corporation providing its members with hospital and medical services, is not in the insurance business. However, an opposite result is reached in 167 ALR 326. See *Cleveland Hospital Service Association* v. *Ebright,* 142 Ohio St 51 (49 NE2d 929). Plaintiff's counsel ought not to be criticized by Mr. Justice BUSHNELL for relying upon a line of authorities cited with approval by the justice. Plaintiff should not be disparaged as though guilty of a "subterfuge" because its counsel is persuaded by such line of authorities not to sue at law under the statute. It is not "subterfuge" for plaintiff to sue in the only forum its counsel finds open to plaintiff. Equity is eminently the proper forum in which to assert a right of subrogation. Subrogation is an appropriate remedy under the circumstances of this case and has not been taken away by any Michigan statute or decision. A corporation may not under the insurance laws of some States be in the insurance business and yet be not primarily liable under its contracts with its patrons.

Defendants Sharpe were primarily liable for the hospital bill. Plaintiff "furnished" the hospitalization by guaranteeing the bill in advance. By its guaranty, plaintiff caused that the hospital furnish the hospitalization. It appears that the bill was charged to Sharpes. If the account had not been so incurred, Sharpes could scarcely have collected from the tort-feasor. There is nothing in the record to show that Sharpes guaranteed the bill; the guaranty would need to be in writing; there is no such

writing in the record. By settling with the tort-feasors for the bill, Sharpes acknowledged their liability, which as we have seen was not secondary and must have therefore been primary. Sharpes, not plaintiff, incurred the bill. Plaintiffs would not very well be found to be paying for such bills in advance of actual need. The practical method of carrying on the business indicates that plaintiff's relationship to the bill was as guarantor.

Plaintiff's statement in the bill in each division, that it is entitled under established common-law and equitable principles of subrogation to recover, is equivalent to an assertion that it is not to be considered primarily liable for the hospitalization bill, for it is clearly established law that ordinarily no person by merely paying his own bill is entitled to subrogation.

If, however, on the hearing it shall be found (contrary to the inferences to be drawn from the record before us) that plaintiff was in fact primarily liable, plaintiff would be without remedy.

Not one solid or substantial reason is advanced for preferring for subrogation one class of indemnitors over and above another falling within any of the definitions quoted either in Justice BUSHNELL's opinion or in this opinion, provided they are in fact indemnitors and not primarily liable.

Sharpes got the money to pay their bill in whole or in part at least, and the money received on account of the hospital bill should have been either turned over to the hospital or to plaintiff. Their failure to turn over the money, made suit necessary. By paying Sharpes' bill, plaintiff became entitled as subrogee of the hospital to sue Sharpes for so much of the money as Sharpes received from the tort-feasors as applied to the bill in question as liquidated damages.

In Michigan, the right of an insurer to subrogation is recognized in an action against a tort-feasor without written agreement for the subrogation. This we have seen in *Wolverine Insurance Co.* v. *Klomparens, supra,* in the foregoing words from an approved citation, "The conclusion is the same whether there is an express provision for subrogation of the insurer, or whether no such provision ·exists." (pages 496, 497) Also, in *Washtenaw Mutual Fire Insurance Co.* v. *Budd, supra,* a chancery case, we recognized the right of the insurance company which had paid the amount indemnified in a policy of fire insurance, to be subrogated to the rights of the insured and bring the chancery suit against a company liable for having caused the fire through negligence. The insurer, however, in that case, recovered nothing because the insurance did not equal the property loss suffered by the insured. However, we recognized the right of the insurer to sue the tort-feasor in chancery. In the instant case, Sharpes suffered no loss whatever respecting the hospital bill, because they never paid any part of it; plaintiff paid it all. Hence, plaintiff is entitled to sue the tort-feasor so as to recover only *in toto* its indemnification payment, the damages being liquidated in nature.

The trial court was in error in dismissing the bill of complaint. Plaintiff should have been permitted to prove the facts that would support its interpretation of the contract. The case should proceed to trial on the merits. The trial court should identify the amount received by defendants Sharpe on account of the hospital bill, notwithstanding the obscurity thrown on that amount by Sharpes' settlement· for a lump sum. The settlement for the lump sum· as alleged in the bill was a species of fraud under the circumstances as set forth in the bill and Sharpes should not be allowed to profit by their own fraud.

The decree appealed from should be reversed. Defendant Manning is required to answer and the cause proceed to a hearing on the merits.

A decree should be entered in accordance with this opinion. Costs to plaintiff.

DETHMERS, J., concurred with REID, J.

BUSHNELL, J. The conclusion reached by Mr. Justice REID, that plaintiff is entitled to the equitable remedy of subrogation, is not in accord with my view of the applicable law. The facts involved are adequately stated in my Brother's opinion and repetition is unnecessary.

Recovery in the instant case is sought primarily upon analogy of hospital service and care to insurance and workmen's compensation law and the law relating thereto. The application of these doctrines to this case is somewhat persuasive, but lacks the compelling authority to decide this issue. It is conceded that the question herein raised is one of first impression in this State and that there are no Michigan cases or decisions which are authoritative on this question.

The comprehensive hospital service and care certificate issued by plaintiff "Blue Cross" to defendants Sharpe contains no subrogation clause nor is any condition recited therein which would except the defendants from the benefits conferred by the contract. Ineligibility for such services is specifically enumerated in clause 6(b) of the certificate, among which is workmen's compensation. However, no exception covering the situation here involved is stated, nor can any logical inference in this regard, if permitted, be drawn from the reading of the entire certificate. It is conclusive that by the very language of the contract not one iota of intent on

the part of plaintiff to recover for hospital services rendered upon accidental injury may be adduced.

Plaintiff cites *Washtenaw Mutual Fire Insurance Co.* v. *Budd,* 208 Mich 483, and claims that it is engaged in activities analogous to the field of insurance. This contention is erroneous. The requisite for insurance is wholly lacking and its closest relationship thereto is that the enabling statute (CL 1948, § 550.501 *et seq.* [Stat Ann 1943 Rev § 24.621 *et seq.*]), under which the plaintiff corporation is organized, provides for supervision by the State commissioner of insurance.

"If there is no hazard or peril, as contemplated by a statute defining insurance, but a mere contract entitling certificate holders to medical services or supplies at free or reduced rates, the contract is not one of insurance." 29 Am Jur, Insurance, § 12, p 54, citing *State, ex rel. Fishback,* v. *Universal Service Agency,* 87 Wash 413 (151 P 768, Ann Cas 1916C, 1017).

In 29 Am Jur, Insurance (1953 supp), at pages 4 and 5, § 12.5, it is said:

"A majority of cases dealing with the subject hold that a corporation, whether or not organized for profit, the object of which is to provide the members of a group with medical services and hospitalization, is not engaged in the insurance business and hence not subject to the insurance laws." Citing therein *California Physicians' Service* v. *Garrison,* 28 Cal2d 790 (172 P2d 4, 167 ALR 306); *Butterworth* v. *Boyd,* 12 Cal2d 140 (82 P2d 434, 126 ALR 838); and *State, ex rel. Fishback,* v. *Universal Service Agency,* 87 Wash 413 (151 P 768, Ann Cas 1916C, 1017).

See, also, annotations and authorities cited in 63 ALR 731, 100 ALR 1456 and 119 ALR 1245.

It is evident from the foregoing that insurance law affords us no cure-all in resolving this problem. It is conceded by plaintiff that since it is not an

insurance company it cannot claim the benefit of CL 1948, § 612.2 (Stat Ann § 27.654), that permits insurers to join in actions against tort-feasors at law.

If an action would have been instituted by the Sharpes in order to recover against Manning for the tort, plaintiff could not have joined in that action and asserted its alleged claim of subrogation. Defendant Manning conversely would not have been permitted to introduce testimony showing that the element of damages covering hospital expenses had been paid by the Michigan Hospital Service, *Motts v. Michigan Cab Company,* 274 Mich 437, thereby reducing the extent of his liability. Hence, plaintiff invokes the aid of a court of equity in order to enforce an alleged right of subrogation existing in its favor and to accomplish indirectly that which it could not do directly. My Brother's opinion candidly approves such a subterfuge and claims that equities exist in favor of the plaintiff, Michigan Hospital Service. I cannot agree to such a novel and unprecedented holding which completely overlooks the equitable nature of the doctrine of subrogation.

In *Wolverine Insurance Co. v. Klomparens,* 273 Mich 493, a case involving recovery by an insurer under an automobile collision insurance policy, this Court allowed subrogation. That case is not authority for permitting subrogation here and is clearly distinguishable from the case at bar.

In the *Klomparens Case,* plaintiff Wolverine had issued an automobile collision insurance policy to one John J. Lanting, containing the usual subrogation clause. On February 12, 1934, a collision occurred in which Lanting, as a result of defendant's negligent operation of his automobile, sustained both personal and property damage. Plaintiff on March 7, 1934, paid its insured an adjusted sum for property damage and took an assignment of his

claim against defendants. In negotiations and adjustments arising out of the matter, defendants were represented by their own insurer and both insurance companies were represented by attorneys and their agents but no formal or written notice of assignment was given defendants until July 13, 1934.

Lanting put his claim in the hands of an attorney and on June 2d a settlement agreement was executed releasing defendants from all claims arising out of the collision. In an action by plaintiff as assignee of Lanting, defendants contended that the settlement with Lanting was a bar to this action by the insurer because they had no notice of the assignment to plaintiff prior to the settlement agreement. The Court in overruling this contention said (p 496):

"The facts are that defendants, through their investigators and attorneys, were fully informed before the settlement that plaintiff had made payment of property damage on its policy; and, on Mr. Lanting's claim that plaintiff had not paid his full loss therefor, an additional amount for property damage was allowed by defendants in the settlement with him. The rule is applicable:

" 'It is too well settled to render the citation of authorities necessary that, as between an insurer and a tort-feasor who has caused a loss of the insured property, the latter is ultimately liable for the loss, and that upon payment to the insured by the insurer the latter is entitled to be subrogated *pro tanto* to the insured's right against the tort-feasor. With this right in view the authorities are agreed that where, with knowledge of a previous settlement by the insurer with the insured, a tort-feasor who is responsible for the loss procures a release by making a settlement with the insured, the release amounts to a fraud upon the insurer's right, and therefore constitutes no defense as against the insurer in an

action to enforce its right of subrogation against the tort-feasor.

" 'And the conclusion is the same whether there is an express provision for subrogation of the insurer, or whether no such provision exists and the insurer's right arises alone from its equitable right.' " LRA 1916A, 1282, 1283, note.

The cases cited by Mr. Justice REID to sustain the right of subrogation involve either indemnification contracts or some form of employer liability insurance. No such contract is involved here. The agreement entered into by defendants Sharpe · provides that upon payment of a fee the Michigan Hospital Service will provide hospital service for a stipulated period. There is no question that this service was purchased with the understanding that hospital care would be furnished the purchaser "whenever needed." There are no exceptions other than those contained in the clause heretofore cited.

Plaintiff thus had a primary obligation to provide service in accordance with the terms of the contract. This it fulfilled but it does not follow that it is now entitled to be subrogated to the amount it has expended under its contract.

In *Machined Parts Corp.* v. *Schneider,* 289 Mich 567, the doctrine of subrogation was discussed at length. The Court there said (p 575):

" 'The doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of one who pays the debt in performance of his own covenants. This right never follows a primary liability. 37 Cyc, p 374 and the cases there cited. *Spire* v. *Spire,* 104 Kan 501 (180 P 209.) The doctrine is so well understood that we forbear to cite further authorities.'

"In *Luikart* v. *Buck,* 131 Neb 866 (270 NW 495) the court said:

" 'The right of subrogation never follows an actual primary liability, and one who discharges a primary liability has no right of subrogation against another. In such cases payment is an extinguishment of the liability.'

"In *St. Louis & S. F. R. Co.* v. *Excello Feed Milling Co.* (Mo App), 215 SW 755, the court said:

" 'We are unable to see where the doctrine of subrogation enters into the case for the reasons: First, that "subrogation is allowed only in favor of one who under some duty or compulsion, legal or moral, pays the debt of another; and not in favor of him who pays a debt in performance of his own covenants, for the right of subrogation never follows an actual primary liability." 37 Cyc, p 374; *Hazle* v. *Bondy,* 173 Ill 302 (50 NE 671); *Brown* v. *Sheldon State Bank,* 139 Iowa 83, 94, 95 (117 NW 289).'

"In *Brown* v. *Sheldon State Bank,* 139 Iowa 83, 94, 95 (117 NW 289), the court states as follows:

" 'Subrogation is allowable in equity, only in favor of a person who has advanced money to pay the debt of another, to whom he stood in the position of surety, or where he has been compelled to pay the debt of another to protect his own rights, 27 Am & Eng Encyc, p 202. It is never allowed in favor of a person who is himself personally liable for the debt he discharges by payment. *Bolton* v. *Lambert & Co.,* 72 Iowa 483 (34 NW 294); *Sacramento Bank* v. *Pacific Bank,* 124 Cal 147 (56 P 787, 45 LRA 863, 71 Am St Rep 36).' "

See, in this regard, *Leser* v. *Smith,* 219 Mich 509, and cases cited therein; *French* v. *Grand Beach Co.,* 239 Mich 575; and *Smith* v. *Sprague,* 244 Mich 577. See, also, *Shealy* v. *American Health Insurance Corp.,* 220 SC 79 (66 SE2d 461, 27 ALR2d 942, and the annotations which follow at page 946).

The effect of my Brother's opinion is to rescind the contract upon which the action is based.

The decree dismissing plaintiff's bill of complaint, as amended, is affirmed. Costs to appellees.

BUTZEL, C. J., and CARR, SHARPE, and BOYLES, JJ., concurred with BUSHNELL, J.

KELLY, J., took no part in the decision of this case.